ALBERT P. NOWICKI, Plaintiff-Appellee, *v.* EVANSTON FAIR HOUSING REVIEW BOARD *et al.*, Defendants-Appellants.

First District (4th Division)    No. 58341

Opinion filed May 26, 1976.

Jack M. Siegel, Corporation Counsel, of Evanston, for appellants.

Kirkland & Ellis, of Chicago, for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This case was originally appealed from the Circuit Court of Cook County in 1974 and was reversed by this court on December 11, 1974 (25 Ill. App. 3d 129), on the basis that the circuit court lacked jurisdiction. The Illinois Supreme Court, in Case No. 47316, handed down on November 17, 1975 (62 Ill. 2d 11), held the Circuit Court of Cook County did have jurisdiction, and remanded the cause back to this court for a determination on the merits.

The issue for review is whether the decision of the Fair Housing Review Board was against the manifest weight of the evidence.

The plaintiff, Albert P. Nowicki, is the property manager of the firm of Heil & Heil, located in Evanston, Illinois and is in charge of the approval of applicants for rental apartments in buildings managed by Heil & Heil. The defendants are the Fair Housing Review Board of the City of Evanston, an administrative agency established under chapter 25½ of the Code of the City of Evanston and the individual members of the Board, and Horacio D. Lewis, a black, who initiated the complaint against Nowicki. An order was entered on January 17, 1972, by the Evanston Fair Housing Review Board finding Nowicki guilty of violating certain provisions of the Fair Housing Ordinance, and he was fined $500. The Circuit Court of Cook County reversed the finding of the Fair Housing Review Board and held its decision and finding were against the manifest weight of the evidence.

On June 5, 1971, Edward Maxwell, a caucasian, was a tenant in an apartment building managed by Heil & Heil. He had placed an advertisement in the Chicago Tribune, offering to sublease the apartment and indicated the rent had been paid through June.

On June 6, a black family viewed the apartment and assured Maxwell they were going to fill out an application the next day.

On Monday, June 7, Mrs. Eda Kelly, a black, saw the apartment and went to Heil & Heil to fill out an application. She was advised by the woman at the desk that it would not make sense for her to fill out an application because so many other people had done so already. Mrs. Kelly insisted on completing the application and was informed five or six days later she did not qualify.

On June 8, Mr. Horacio D. Lewis called Maxwell about the apartment. Maxwell then called Heil & Heil to see if there were any problems renting to blacks, because he was aware there were no blacks in the building. He was assured renting to blacks presented no problems.

Lewis saw the apartment and indicated to Maxwell he wanted to take possession on June 13. Lewis, accompanied by his wife and infant child,

filled out the forms for the apartment on June 9, but did not have his checkbook and was unable to put down a $25 deposit, so he returned with the check the next day.

Lewis testified he repeatedly stated he needed the apartment immediately, but was instructed by Miss Puchtel of Heil & Heil not to fill out the application blank indicating when the lease was to start. He also asked whether the size of his family had anything to do with whether he got the apartment, and was told it would not be a criterion for any kind of determination. In the next several days he made repeated inquiries as to the disposition of his application. Like Mrs. Kelly, he was informed there were many other applicants and his impression was they were trying to discourage him from applying.

On June 15, Paul Rom, a caucasian, saw the apartment and completed an application including the blank for the start of the lease indicating June 17. He had graduated from Northwestern University in the first part of June and was starting a job as a chemical engineer on June 21. He stated on the application he needed the apartment immediately and would pay for any long distance calls to his bank in Wisconsin to check his credit.

On the same day, Heil & Heil returned Mr. Lewis' check and stated: "As you know, the apartment has been rented." On June 17, Heil & Heil notified Maxwell they would accept Rom and cancelled his lease.

Mr. Nowicki testified Lewis was economically qualified but Rom was a better tenant for that apartment because he was a single man and supported only himself on a slightly higher salary. In addition, it was the firm's policy to limit one bedroom units to "more or less two persons per bedroom." He stated he was unaware of Lewis' race and only saw the completed applications which were put on his desk. Rom's credit check was made in one day by phone, but Lewis' could not be completed within the five days because Chicago area financial institutions are reluctant to give information over the telephone. Miss Puchtel testified she made four phone calls in two working days to check out Mr. Lewis' references.

Nowicki also testified Rom's application showed he wanted immediate occupancy but Lewis' application did not show a starting date. His inquiry of Lewis' landlord indicated his lease expired on June 30, and Nowicki assumed he would not take occupancy until that time.

The Evanston Fair Housing Review Board found Nowicki violated Sections 25½—2 and 25½—6(g) and (i) of the Evanston Fair Housing Ordinance. Those sections provide as follows:

> "Section 25½—2. Purpose and Declaration of Policy. It is hereby declared to be the policy of the City of Evanston and the purpose of this ordinance, in the exercise of its police and regulatory powers for the protection of the public safety, for the health, morals, safety, and welfare of the persons in and residing in the

City, and for the maintenance and promotion of commerce, industry, and good government in the City, to secure to all persons living and/or working, or desiring to live and/or work in the City of Evanston, an equal opportunity to purchase, lease, rent, or occupy real estate without discrimination based on race, color, religion, or national origin.

\* \* \*

Section 25½—6. Discrimination Prohibited. No owner, lessee, or sub-lease of real property, real estate broker, lender, financial institution, advertiser, or agent of any of the foregoing, shall discriminate against any other person because of the race, color, religion, or national origin of such other person or because of the race, color, religion, or national origin of the friends or associates of such other person, in regard to the sale or rental of, or dealings concerning real property. Any such discrimination shall be considered an unfair real estate practice. Without limiting the foregoing, it shall also be an unfair real estate practice and unlawful for any real estate broker or other person to:

\* \* \*

(g) Refuse to Sell. Refuse to sell or rent real property because of race, color, religion, or national origin.

\* \* \*

(i) Withholding Housing. Represent to any person that any real property is not available for inspection, purchase, sale, lease, or occupancy when in fact it is so available, or otherwise to withhold real property from any person because of race, color, religion, or national origin."

■■ The standard for reviewing a determination by an administrative agency is whether the decision and findings of the agency are against the manifest weight of the evidence. In *Marion Power Shovel Co. v. Department of Revenue* (1969), 42 Ill. 2d 13, 17, the court stated:

"It is axiomatic that the findings of an administrative agency on questions of fact are *prima facie* correct and are not to be disturbed upon review unless manifestly against the weight of the evidence."

Similarly, in the case of *Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 982, the court stated:

"A reviewing court will not disturb the factual findings of an administrative agency unless the findings are clearly against the manifest weight of the evidence. (*Davern v. Civil Service Com.*, 47 Ill. 2d 469, 269 N.E.2d 713.) Where the resolution of factual issues is dependent upon the credibility of witnesses, the courts will not, on

review, reweigh the evidence even though an opposite conclusion might be reasonable."

■■ A review of the record indicates Horacio Lewis completed his application for the apartment on June 10 and was instructed not to fill in the space for date of occupancy even though he repeatedly stated his immediate need for the apartment. He was told there were many other applicants for the apartment even though only two other parties had visited the premises and there was never any documentary proof of the existence of the other applications. He also made repeated inquiries as to the progress of his application but he was never asked when he sought possession.

We find there is evidence to support the decision of the Evanston Fair Housing Review Board and this court will not reweigh the evidence or substitute its judgment for that of the Board and it was error for the Circuit Court to do so.

For these reasons, the judgment of the Circuit Court of Cook County is reversed.

Circuit court reversed; board affirmed.

JOHNSON, P. J., and ADESKO, J., concur.