S & F CORPORATION *et al.*, Plaintiffs-Appellees, *v.* RICHARD J. DALEY, Mayor of the City of Chicago, *et al.*, Defendants-Appellants.

First District (5th Division)   No. 77-651

Opinion filed April 28, 1978.—Rehearing denied May 24, 1978.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellants.

Patrick A. Tuite, of Chicago, for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This action was brought in the circuit court of Cook County on a common law writ of *certiorari* by plaintiffs, S & F Corporation and its president, Sidney Finzelber, to reverse the revocation of their food dispenser and public place of amusement licenses by the Mayor of the City of Chicago. On January 31, 1977, the circuit court entered an order reversing the decision of the mayor, and it is from that order that defendants appeal. We reverse the trial court. The pertinent facts follow.

Plaintiffs were licensed by the City of Chicago to dispense food and have a public place of amusement at 874 North Wabash Avenue, Chicago. Pursuant to these licenses plaintiffs operated a business, known as the Candy Store, at that address which featured nude dancing by female entertainers. On April 30, 1976, plaintiffs were given notice that proceedings were being instituted by the mayor to revoke their food dispenser and public place of amusement licenses. Hearings on this matter were had before the Mayor's License Commission, Deputy License Commissioner Joseph W. Handy, Jr., presiding, at which the following pertinent testimony was adduced.

Gerald Buchta testified that on September 13, 1975, at about 1:30 a.m., he went to the Candy Store with a friend named Joe Gomez. They entered, were seated at a table, and ordered two beers from a waitress, after which two uninvited women sat next to them at their table. When the waitress returned with their drinks, she asked if the two men would like to buy the women a drink. They replied that they would not and the women left.

Subsequently, two other women sat with Buchta and Gomez, and the waitress returned to tell them that they had just bought some drinks for these girls at $40 each. She brought two containers to the table which appeared to contain fruit cocktail. When the customers objected to

paying for these "drinks" the waitress pointed to two men at the bar and said "They're not going to like it." She told the customers to pay or else, and made a motion to the two men at the bar, approximately 15 feet away. Buchta and Gomez then paid the waitress $20 each, separated to different tables for about five minutes, and then left the premises. They reported the incident to the Chicago Avenue police station.

On cross-examination Buchta restated that the waitress had told them to buy drinks for the women, or the two men at the bar wouldn't like it. When asked whether anybody ever threatened to harm him bodily, Buchta responded affirmatively. While he could not recall the specific words used, he stated that the waitress said they would be "taken apart," or that they would "bash their heads in" if they didn't purchase the drinks for the women. He related this threat to the police when he reported the incident.

Mabel Massetti testified that she was a waitress at the Candy Store, and that she was working there on September 13, 1975. She stated that she never threatened anyone and that she would not bring anything to a customer that he had not ordered.

Sidney Finzelber, the owner of the premises, testified that the waitresses were instructed not to bring anything to a customer unless he specifically ordered it. He never instructed any employees to inflict bodily harm upon any customer who is reluctant or refuses to pay his bill.

Officer Bruno Muczynsky testified that on September 13, 1975, he talked with Gerald Buchta concerning an incident which allegedly occurred at the Candy Store. Buchta told the officer that he was forced by the waitress there to buy two bottles of champagne, or else "the doorman would take care of him." Buchta did not tell him that anyone had threatened to "tear him apart" if he did not buy the drinks.

Investigator Ronald Anderson testified that he contacted Buchta the day after he made his report to the police. He asked him about the incident and Buchta told him that the waitress brought some unordered drinks to his table for two women, along with a bill of $80. When they objected to this, the waitress told them that the bouncer "would not be very happy if you didn't pay."

There was also evidence adduced at the hearings before the License Commission regarding entertainers appearing nude at the Candy Store. A number of different police officers testified that they observed dancers for the plaintiffs appear on the premises in a state of nudity.

On September 3, 1976, findings were made that certain acts had been committed upon the premises by plaintiffs' employees and agents upon which the order of revocation was based. The first finding was that drink solicitation had occurred in violation of both a State statute (Ill. Rev. Stat.

1975, ch. 38, par. 26.1—2(a), repealed by P.A. 80-360, §3, eff. Oct. 1, 1977) and a city ordinance (Municipal Code of Chicago, ch. 147, §147.15.1(a)).[1] Findings two through five concerned dancers performing in a state of nudity, also contrary to a city ordinance. (Chicago Municipal Code, ch. 192, §192—8.) The final finding reads as follows:

> "That on September 13, 1975, at or about 2:30 A.M., the licensee corporation, by and through its agent, name unknown, waitress, coerced two patrons, namely: JOSEPH GOMEZ and GERALD BUCHTA, through the threat of bodily harm, to but [sic] two (2) bottles of Champagne, at the cost of eighty dollars ($80.00), contrary to Chapter 38, §12—1 of the Illinois Revised Statutes, 1975 [Assault]."

OPINION

Preliminarily we note that of the six findings upon which the revocation was initially based, only the last is at issue in this appeal. Defendants correctly decline to pursue the finding concerning drink solicitation since both the laws cited therein only pertain to those premises licensed to sell alcoholic beverages at retail. (See Ill. Rev. Stat. 1975, ch. 38, par. 26.1—1; Municipal Code of Chicago, ch. 147, §147—15.) The record is clear that the Candy Store had no such liquor licenses.[2] In addition, the four findings concerning nudity in a public place, while pursued by defendants before this court, do not provide a basis for upholding the revocation of plaintiffs' licenses. The ordinance involved in these findings (Chicago Municipal Code, ch. 192, §192—8) was declared unconstitutional by this court in *Jamaica Inn, Inc. v. Daley* (1977), 53 Ill. App. 3d 257, 368 N.E.2d 589, which case is presently on appeal to the Illinois Supreme Court.[3] We obviously may not uphold the license revocation on the basis of a constitutionally invalid ordinance. Therefore, we are left with a consideration of the License Commission's sixth finding, that an assault was committed by plaintiffs' employees upon two patrons, Gerald Buchta and Joseph Gomez.

■■■ In reviewing the findings of a municipal agency pursuant to a common law writ of *certiorari* the court must determine whether the record contains any evidence which fairly tends to support the agency's findings. (*Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App.

---

[1] This ordinance was recently declared unconstitutional in *Jamaica Inn, Inc. v. Daley* (1977), 53 Ill. App. 3d 257, 368 N.E.2d 589, *appeal allowed* (1978), 67 Ill. 2d 592 (1978).

[2] The "beer" served to patrons of the Candy Store was actually a product known as Kingsbury Brew Near Beer. This product is less than .5% alcohol and thus not within the definition of an alcoholic beverage. See Ill. Rev. Stat. 1975, ch. 43, par. 95.05; Chicago Municipal Code, ch. 147, §147.1.

[3] This ordinance has also recently been substantially amended. See the Journal of the Proceedings of the City Council of the City of Chicago, Illinois, Jan. 17, 1978, at 7228-29.

3d 879, 324 N.E.2d 65.) The differences that at one time existed between common law and statutory *certiorari* have been all but obliterated. (See *Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 367 N.E.2d 1286; *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 338 N.E.2d 186.) In a proceeding pursuant to a common law writ of *certiorari* the reviewing court will not reweigh the evidence, and it may only set aside the agency's determination if it is palpably or manifestly against the weight of the evidence. (See *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 15, 338 N.E.2d 186, 188, quoting *Superior Coal Co. v. O'Brien* (1943), 383 Ill. 394, 400-01, 50 N.E.2d 453, 457; *Nowicki v. Evanston Fair Housing Review Board* (1976), 39 Ill. App. 3d 109, 349 N.E.2d 596.) In the instant case the trial court obviously concluded that the Commission's finding concerning the alleged assault was contrary to the manifest weight of the evidence. This was error.

Plaintiffs argue that the trial court did not so err in that the testimony of Gerald Buchta was inconsistent, uncorroborated, contradicted and thoroughly impeached. They argue in essence that Buchta's testimony was so incredible and unworthy of belief that the trial court could properly discount it and thus reverse the license revocation. We must disagree.

■■ In this case it was for the hearing commissioner, and not the court, to determine the credibility of the witnesses. (See *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 371 N.E.2d 1116.) As this court stated in *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 277, 254 N.E.2d 814, 820:

> "In cases of this kind, we, and the Circuit Court, and the License Appeal Commission are all required to accept the judgment of the Local Commissioner as to the credibility of the witnesses. It is only he, as the trier of the facts, who is authorized to assess credibility, weigh the evidence, reconcile conflicting evidence, if possible, and, if not possible, determine which witnesses are worthy of belief. [Citations.] Neither the Circuit Court nor this court should disturb the Commissioner's decision so long as it is supported by substantial evidence, and is neither arbitrary nor contrary to the manifest weight of the evidence."

We cannot say in the instant case that the commissioner's choice to believe the testimony of Buchta was so palpably erroneous or arbitrary so as to render his finding against the manifest weight of the evidence.

Buchta testified that unordered drinks were forced upon himself and Gomez by the waitress under the threat of physical action being taken by plaintiffs' bouncers. Buchta stated that he was threatened with bodily harm if he refused to pay for the drinks, and while he could not remember the exact words used, the essence of the threat was that he would be "taken care of, torn apart, or have his head bashed in." This

testimony is corroborated by the two police officers who stated that Buchta reported that he had been forced to purchase unordered drinks at the Candy Store or the bouncer "wouldn't be very happy" and the doorman would "take care of him." Such statements are not altogether meaningless or innocent in the context in which they were purportedly spoken in the instant incident, and they certainly carry what may be termed at best a "veiled threat." To put it simply, Buchta's testimony establishes that he was, or at least he felt, threatened by the actions of plaintiffs' employees. This is corroborated by his report to the police, and it is also borne out by the fact that Gomez and Buchta each paid $20 for the unordered drinks, immediately separated to different tables, and then left, instead of just paying and remaining with the women who received the drinks.

Plaintiffs argue that the testimony of the police officers is inconsistent with that of Buchta in that they stated he did not tell them in exact words that plaintiffs' employees threatened to "tear him apart" or "bash his head in." As noted above, we do not believe the officers' testimony to be contradictory to Buchta's. To the extent there is any inconsistency, however, it was for the hearing commissioner to reconcile the testimony and determine its weight and credibility. Similarly, the fact that the testimony of Mabel Massetti and Sidney Finzelber contradicted Buchta merely presents a question of credibility. We cannot say the hearing commissioner erred in choosing to believe Buchta.

Plaintiffs argue that even if Buchta's testimony is believed, it does not establish the elements necessary to constitute an assault. We disagree.

■■■ The law is clear that when, in a license revocation proceeding, the City charges a violation of a particular section of the Criminal Code, the elements of that offense must be sustained by the proof. (See *Daley v. Resnick* (1972), 5 Ill. App. 3d 683, 284 N.E.2d 39.) A person commits an assault when he "places another in reasonable apprehension of receiving a battery." (Ill. Rev. Stat. 1975, ch. 38, par. 12—1.) Contrary to plaintiffs' claims the instant case satisfies this definition. The threat to Buchta was an immediate one, and not merely a threat to act in the future. The waitress gestured toward her male co-employees, 15 feet away, when threatening Buchta. The necessity of a "present ability" to inflict a battery upon the victim (see *People v. Stagg* (1963), 29 Ill. 2d 415, 194 N.E.2d 342) is satisfied by the immediate presence of these bouncers, especially when coupled with the waitress' gestures toward them. The fact that Buchta feared an imminent battery is established by his testimony and from the fact that he paid for the drinks, and we certainly cannot say that under these facts his apprehension of receiving a battery was an unreasonable one.

Lastly, we would agree with plaintiffs that the finding by the

commissioner erroneously recites that champagne was involved in this incident. The "drinks" involved actually were more in the nature of a "fruit cocktail." The commissioner, however, in stating his findings, apparently merely copied the wording contained in the original charges. We do not believe this variance to be fatal.

■■ The key to the instant finding is that an assault was committed by plaintiffs' employees upon patrons of the Candy Store. That fruit cocktail was involved rather than champagne is not important. The recitation of the latter substance in the finding constitutes mere surplusage. (See 2 K. C. Davis, Administrative Law Treatise §16.06 (1958).) The evidence supports the finding that an assault was committed. This is all that is necessary to uphold the revocation of plaintiffs' licenses. The mayor is empowered to revoke the license of any licensee that is found to have violated any State statute. Municipal Code of Chicago, ch. 101, §101—27, and ch. 104.1, §104.1—19.

■■ In sum, the issue of whether an assault was committed by plaintiffs' employees upon two patrons was a question of fact for the hearing commissioner to decide. We cannot say that he erred in believing the testimony of Gerald Buchta and thus his finding in this regard was not against the manifest weight of the evidence. Therefore, the trial court erred in reversing the revocation of plaintiffs' licenses.

For these reasons, the judgment of the circuit court of Cook County is reversed and the order of revocation reinstated.

Reversed; order reinstated.

LORENZ and WILSON, JJ., concur.