In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2547

Robert S. Merheb,

Plaintiff-Appellant,

v.

Illinois State Toll Highway Authority,

Defendant-Appellee.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 98 C 3190--Charles R. Norgle, Sr., Judge.

Argued March 30, 2001--Decided October 3, 2001


  Before Flaum, Chief Judge, and Posner and
Evans, Circuit Judges.

  Posner, Circuit Judge.  The plaintiff
appeals from a grant of summary judgment
in favor of his former employer, the
Illinois tollway authority. His suit
charged discrimination on the basis of
his sex (male) and national origin (Leba
nese), and also retaliation, under Title
VII of the Civil Rights Act of 1964, as
well as breach of contract under the
common law of Illinois. Regarding the
state law claim (for there is no Eleventh
Amendment immunity to suits under Title
VII, Fitzpatrick v. Bitzer, 427 U.S. 445,
448-49 (1976); Holman v. Indiana, 211
F.3d 399, 402 n. 2 (7th Cir. 2000)), our
court held in Miller-Davis Co. v.
Illinois State Toll Highway Authority,
567 F.2d 323, 327-31 (7th Cir. 1977),
that the tollway authority is not
entitled to the state's Eleventh
Amendment immunity because it is not
financed by the state. 605 ILCS 10/25.
The Eighth Circuit later reached the
opposite conclusion, but in a cursory
analysis that mistakenly assumes that
Illinois would pay a judgment against the
tollway authority. Jackson Sawmill Co. v.
United States, 580 F.2d 302, 308-09 (8th
Cir. 1978).

  Construed as favorably to the plaintiff
as the record will permit, the facts are
as follows. Merheb was employed by the

tollway authority as an auditor. In 1996, alleging that a female supervisor had slapped him, he filed a charge of discrimination with the Illinois department of human rights. He settled the dispute kicked off by the charge in an agreement in which the authority promised him a new job. The agreement further states that "if [the tollway authority] deems that Robert Merheb has committed any infraction in his new position warranting discipline, only progressive discipline, as set forth in [the authority's employee manual] shall be used to correct the alleged improper behavior." The manual lists four types of discipline, in ascending order of severity: oral reprimands for minor infractions, written reprimands if oral ones fail to do the trick, suspension without pay if reprimands have failed "or the offense indicates more stringent corrective action," and discharge "when other corrective measures have failed or if the gravity of the offense warrants it." Ralph Wehner, the tollway authority's executive director, was aware of Merheb's charge of discrimination and was overheard to say that he was "working on getting rid" of Merheb. This was in July 1997, when Merheb started work in his new position.

His supervisor was Sharon Conrad. For the remaining six months of his employment, she "yelled at Merheb; shehumiliated, degraded and demoralized him in front of others on a constant basis" (we are quoting from his brief). "Although Conrad hardly knew Merheb, she was rude, impolite and unkind to him on a constant basis." She incited another employee to file a baseless claim of sexual harassment against Merheb for "staring," imitated his accent in a mocking fashion, and was excessively critical of his work. We may assume without having to decide that if thisconduct actually occurred and was motivated by Merheb's sex or national origin, it would rise to the level of actionable harassment--harassment so severe as to make the conditions of his employment intolerable. See, e.g., Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993); Cooke v. Stefani Management Services, Inc., 250 F.3d 564, 565-67 (7th Cir. 2001); Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997); Fitzgerald v. Henderson, 251 F.3d

345, 350-51 (2d Cir. 2001); Torres v. Pisano, 116 F.3d 625, 630-31 (2d Cir. 1997); Penry v. Federal Home Loan Bank, 155 F.3d 1257, 1261 (10th Cir. 1998). The closest case to this one is Fitzgerald, though it is distinguishable because the supervisor's abuse followed his unsuccessful attempts to obtain sexual favors from the plaintiff. The present case must be reckoned a close one in light of such cases as Webb v. Cardiothoracic Surgery Associates, 139 F.3d 532, 539 (5th Cir. 1998), and Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 962-63 nn. 2-3, 966-67 (8th Cir. 1999). But all that is neither here nor there, for while the victim of actionable harassment would of course be entitled to damages, Merheb sought no relief for harassment until the appeal, which was too late. Cf. Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1132 n. 1 (7th Cir. 1994). His only complaint was about being discharged. The harassment is thus relevant only as background.

We move therefore to the circumstances of his discharge. After six months of torture by Conrad, Merheb blew his stack. Criticized by Conrad for a mistake, he became furious. According to several employees who were present, his face turned red, his eyes bulged and took on a "wild look," and he stood up and screamed in rage something to the effect that "If you don't do something about Sharon, I will." One of these employees feared that Merheb was about to "go postal." Another was sufficiently frightened to run to the department supervisor, Mark Swidergal, and tell him he had to do something. A visibly shaken Conrad cried and told a human relations officer, Susan Sinz, that she feared for her safety. Sinz believed her, having been on the phone with Merheb during the incident.

The outburst occurred on Friday. The following Monday, Sinz and Swidergal met with the authority's in-house counsel and Jim Wassell, Swidergal's supervisor, and they agreed that Merheb should be fired. Wehner--who remember was the tollway authority's executive director--approved their decision. The next day Merheb was fired for "gross insubordination, disrespectful conduct, [and] threatening behavior."

Merheb argues that the discharge broke

the promise in the settlement agreement that any discipline meted out to him in his new position would be in accordance with the provisions of the employee manual governing progressive discipline. (This is his state law breach of contract claim.) But those provisions, which we quoted earlier, do not require in all cases climbing the first three steps on the ladder before reaching step 4, discharge. They would be insane if they did, for it would mean that if Merheb had killed Conrad he could have received only an oral reprimand, and if he had then killed Swidergal as well, only a written one. Contracts like statutes are not read literally when the result would be an absurdity. Health Cost Controls of Illinois, Inc. v. Washington, 187 F.3d 703, 712 (7th Cir. 1999); Level 3 Communications, Inc. v. Federal Ins. Co., 168 F.3d 956, 958 (7th Cir. 1999); Catalina Enterprises, Incorporated Pension Trust v. Hartford Fire Ins. Co., 67 F.3d 63, 66 (4th Cir. 1995); Wessels, Arnold & Henderson v. National Medical Waste, Inc., 65 F.3d 1427, 1436 (8th Cir. 1995); United States v. Irvine, 756 F.2d 708, 710 (9th Cir. 1985). Human foresight is limited. Not all contingencies can be anticipated and provided for in a contract. Attempting to do so would make the process of contract formation cumbersome and expensive beyond reason. An important function of contract law is to fill the interstices of a contract--in effect to complete the contract--by interpolating terms reasonably to be inferred from the essential terms, purpose, context, and character of the parties' deal. All that the settlement agreement in this case, when reasonably interpreted, did was protect Merheb from retaliation for having filed a charge of discrimination by assuring him that he would be disciplined in the same manner as any other employee. Firing him for threatening behavior was not treating him differently from how any other employee would have been treated. The-progressive-discipline provisions of the tollway authority's employee manual don't even purport to forbid discharge before the employee has received lesser punishment. Discharge is authorized "when other corrective measures have failed or if the gravity of the offense warrants it." It did warrant it.

At least if the facts are as we have

stated them. Merheb argues that he has been misunderstood; that he hadn't meant to threaten anybody. But the issue is not whether Merheb was a menace; it's whether he appeared to be. Unlike the plaintiff in Crawford v. Runyon, 37 F.3d 1338, 1341-42 (8th Cir. 1994), he doesn't deny having engaged in the conduct that led him to be fired and there is no doubt that several employees were seriously frightened by his outburst. Two of them complained immediately to Swidergal, and their complaints were corroborated by what Sinz heard on the phone. The deposition testimony of other employees makes clear that Merheb had put a fright into them as well. Merheb could have contested that testimony by attempting to show, for example, that they had been induced to testify so by threats or promises by the employer. He did not. Workplace violence is sufficiently common to have given rise to the expression "go postal" (a generic term for attacking coemployees, not one limited to postal employees) used by one of these employees, and to justify management in treating threatening behavior with exemplary severity.

It's not as if only a mouse would have been frightened by Merheb's outburst. He doesn't argue that the employer was unreasonable in concluding from the other employees' complaints and reactions that Merheb had committed an offense against the discipline of the workplace too serious to be rectified by progressive discipline. Compare Crawford v. Runyon, 79 F.3d 743 (8th Cir. 1996). He does note that the district judge, in dismissing the tollway authority's very curious counterclaim in which it charged Merheb with having assaulted Conrad (a charge that, as the judge correctly noted, the authority had no standing to make), said that Merheb hadn't committed an assault. But threat and assault are not synonyms in law. An assault requires words, ordinarily accompanied by a menacing gesture (such as pointing a gun at the plaintiff), that make the plaintiff fear an imminent attack. See, e.g., I. De S. & Wife v. W. de S., Y.B. Liber Assisarum, 22 Edw. 3, f. 99, pl. 60 (1348 or 1349); Beach v. Hancock, 27 N.H. 223 (1853). It is doubtful, despite the fear expressed by one employee that Merheb was about to "go postal," that his outburst was sufficiently ominous to induce a

reasonable such fear. But an employer need not tolerate the continued presence of an employee who has terrified his coworkers merely because the technical elements of an assault are not present. Only if the other employees' frightened reactions to the words or conduct of a fellow employee were completely unreasonable would the employer be obligated to disregard them.

From what we have said it is obvious that Merheb's claim that he was discharged because of his sex or national origin must fail. He has no direct evidence of discrimination, and as we have just seen he has failed to show that the stated ground for his discharge--his threatening behavior--was a mere pretext from which a trier of fact might infer a discriminatory intent. See Lenoir v. Roll Coater, Inc., supra, 13 F.3d at 1133; Smith v. Leggett Wire Co., 220 F.3d 752, 759 (6th Cir. 2000); Crawford v. Runyon, supra, 37 F.3d at 1341.

That leaves only the claim of retaliation, which pivots on the fact that Wehner, who approved Merheb's termination, had six months earlier said that he was working to get rid of this employee who some months before had filed a charge of discrimination against the tollway authority of which Wehner was executive director. What defeats an inference of retaliation are the circumstances in which Merheb was discharged. Wehner was out of town when Sinz called him to tell him that she, Wassell, Swidergal, and the authority's lawyer wanted to fire Merheb because he had threatened a manager. What choice had Wehner? It is inconceivable that, had he not been working to get rid of Merheb, he would have said, "I don't believe you" or "threatening a manager is not grounds for discharge." He may have harbored retaliatory animus against Merheb, but no reasonable jury could conclude that, had it not been for animus, he would not have approved Merheb's discharge. He had no choice.

Affirmed.