# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3158

HENRY S. KIJONKA,

*Plaintiff-Appellant,*

v.

MICHAEL SEITZINGER, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01-CV-4219—**J. Phil Gilbert**, *Judge.*

_____

ARGUED MARCH 3, 2004—DECIDED APRIL 14, 2004

_____

Before POSNER, ROVNER, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* Henry Kijonka brought suit for damages under 42 U.S.C. § 1983, claiming to have been arrested without probable cause and thus in violation of his Fourth Amendment rights. The defendants are the arresting officer—a policeman in Lawrenceville, Illinois named Michael Seitzinger—and the county prosecutor, Todd Rietz. The district judge granted summary judgment for the defendants on the ground of qualified immunity and relinquished jurisdiction over the plaintiff's supplemental state-law claims, some of which had named Lawrenceville as an additional defendant.

Fact is often stranger than fiction because most writers of fiction try to make their stories plausible. The events out of which Kijonka's suit arises, though fact, are implausible. About a decade ago, Kijonka, then a state trooper, first became acquainted with Berle "Peanut" Shoulders, Jr.— an ex-con and bad boy of tiny Lawrenceville (population 5,000)—when Kijonka arrested him for a traffic violation. Despite this inauspicious beginning, their relationship blossomed. Shoulders drummed up votes for Kijonka when the latter ran successfully for mayor in 1997, and Kijonka rewarded him by making him the city dog catcher. Shoulders' city employment, however, proved to be turbulent. Allegations that he used a weapon unlawfully, was involved in drug deals, threatened Kijonka and others, and, worst of all, obtained payment for dogs that he didn't catch (the city dog catcher is paid on a per-dog-caught basis) caused Shoulders to be fired. In revenge he took to stalking Kijonka—driving slowly by his house and shouting threats and obscenities.

Kijonka was defeated for reelection and moved to a different town, but on a visit to Lawrenceville happened to drive down the street on which Shoulders lives. This was not reverse stalking; Lawrenceville is minute and Shoulders' street happened to be part of the route to Kijonka's destination. As it happened, officer Seitzinger's car was blocking the street right in front of Shoulders' house. Shoulders and Seitzinger were standing nearby; Seitzinger was helping Shoulders retrieve keys locked in his daughter's car. Noticing that he was blocking Kijonka's car, Seitzinger got into his own car to pull it out of Kijonka's way. As he did so, according to Shoulders, Kijonka rolled down his car window, gave Shoulders a "dirty look," and said: "You have a nice day and your ass is mine you son of a bitch and I will get you." Seitzinger did not hear this, though he heard Shoulders yell to Kijonka, as the latter drove away, "Don't you fuckin' threaten me!"

Shoulders told Seitzinger that he wanted to press charges, and Seitzinger took him to the police station to fill out a complaint, which he did. After recording the time and place of the incident and the reason for Seitzinger's presence, the complaint states only that "Henry Kijonka drove by my house and stopped and roled [*sic*] his window down and gave me a dirty look and said you have a nice day and your ass is mine you son of a bitch and I will get you." Dubious about whether the complaint charged a crime, Seitzinger called prosecutor Rietz, who came down to the station, read the complaint, spoke to Shoulders— who did not, however, so far as appears, elaborate on the circumstances stated in the complaint—and told Seitzinger to arrest Kijonka. Accompanied by other police officers, Seitzinger tracked down Kijonka to a nearby Dairy Queen and arrested him. Rietz recused himself from prosecuting Kijonka, apparently because Shoulders had supported Rietz in his electoral campaign for prosecutor (hardly a plus in the eyes of the law-abiding population, one might have thought). An independent prosecutor was appointed and decided not to bring charges against Kijonka.

The only crime that Kijonka could have been charged with, the parties agree, is assault, which in Illinois is "conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a). Ever since the fourteenth century, assault whether civil or criminal has involved (1) a threatening *gesture*, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an *imminent* battery. E.g., *Merheb v. Illinois State Toll Highway Authority*, 267 F.3d 710, 714 (7th Cir. 2001), citing *I. de S. & Wife v. W. de S.*, Y.B. Liber Assisarum, 22 Edw. 3, f. 99, pl. 60 (1348 or 1349); *Restatement (Second) of Torts* § 29 (1979); Wayne R. LaFave, *Substantive Criminal Law* § 16.3(b) (2d ed. 2003). A merely verbal threat of indefinite action in the indefinite future is

not an assault. *People v. Floyd*, 663 N.E.2d 74, 76 (Ill. App. 1996); *People v. Kettler*, 459 N.E.2d 7, 10-11 (Ill. App. 1984). It is missing two elements: gesture and imminence. "Mere" threats are, it is true, criminalized in special situations, see 720 ILCS 5/12-6 ("intimidation," i.e., extortion), -9 (threatening a public official), 5/29D-20 (making a terrorist threat), but none that is relevant to this case.

Kijonka's rolling down his car window was not a threatening gesture; the obvious reason for his doing so, as a reasonable person would have understood (and, unless the defendant is trying to take advantage of a known vulnerability in his victim, *Restatement*, *supra*, § 27, the victim's apprehension must be reasonable for the defendant to be guilty of assault, *People v. Floyd*, *supra*, 663 N.E.2d at 76), was to enable him to speak to Shoulders. There was no threatening gesture, nor even a present threat. It's not as if Kijonka had said, "I have a gun in my glove compartment and I'm going to reach in and get it and shoot you, you son of a bitch." Even that would have been a threat rather than an assault until he actually reached toward the glove compartment. We did remark in *Soldal v. County of Cook*, 923 F.2d 1241, 1250 (7th Cir. 1991), rev'd on unrelated grounds, 506 U.S. 56 (1992), what seemed at least a slight tendency in the Illinois case law to dispense with the requirement that a gesture accompany the threat if the circumstances indicated that the threat was quite likely to be carried out—immediately. See *People v. Ferguson*, 537 N.E.2d 880 (Ill. App. 1989); *S & F Corp. v. Daley*, 376 N.E.2d 699, 703 (Ill. App. 1978). (No case suggests that the imminence requirement can be waived.) Hence the statement in *People v. Floyd*, *supra*, 663 N.E.2d at 76, that "words alone are not *usually* enough to constitute an assault" (emphasis added). But probably the insertion of "usually" was just an unnecessary hedge (there is such a thing as misstating the law by adding, out of an overabundance of caution, unnecessary qualifications). In

*Ferguson* the defendant, just before delivering the verbal threat, had run to the trunk of his car "telling Norwood [the victim] that if he would not move, defendant had something to move him," and had opened the trunk. 537 N.E.2d at 881. So there was a gesture, albeit it preceded rather than accompanied the threat. And in *S & F Corp.*, a license-revocation case, although the stated basis for the revocation was assault, actually the incident was extortion. See 376 N.E.2d at 702-03.

Shoulders, given his history of stalking Kijonka, may have feared that the day of retribution had arrived (though this is doubtful, given the presence at the scene of a policeman). But a victim's fear, especially when provoked by the victim's own misconduct, cannot transform a remote threat into an assault. The cases that flirt with a gesture-free concept of assault make clear that the threat must be immediate. Kijonka gave no indication that he was about to attack Shoulders. Kijonka was sitting in his car, and, to repeat, a policeman was standing nearby.

So there was no probable cause to arrest Kijonka for assault. The question for us is whether there was any reasonable basis to suppose there was probable cause, as that is the test for qualified immunity. *Thompson v. Wagner*, 319 F.3d 931, 935 (7th Cir. 2003); *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998); *Escalera v. Lunn*, No. 03-7121, 2004 WL 534476, at *4 (2d Cir. Mar. 18, 2004). We cannot find a reported Illinois case that found the elements of assault satisfied in any case remotely like this one, and this dooms Rietz's defense of qualified immunity. (The absolute immunity of a prosecutor does not extend to his giving legal advice to the police when they are investigating whether a crime has occurred. E.g., *Burns v. Reed*, 500 U.S. 478, 492-96 (1991); *Davis v. Zirkelbach*, 149 F.3d 614, 617 (7th Cir. 1998); *Carter v. City of Philadelphia*, 181 F.3d 339, 356 n. 58 (3d Cir.

1999).) No Illinois prosecutor—a law-trained specialist in the enforcement of the criminal law of Illinois—could reasonably believe that Kijonka had committed a crime. Cf. *Burns v. Reed, supra*, 500 U.S. at 495; *Johnson v. Hondo, Inc.*, 125 F.3d 408, 416 (7th Cir. 1997).

The situation with regard to officer Seitzinger is different. As numerous cases, most recently *United States v. Merritt*, No. 02-4211, 2004 WL 549475, at *6-7 (7th Cir. Mar. 22, 2004), recommend, the officer consulted the prosecutor before making the arrest. Having received a formal complaint, Seitzinger was reluctant to drop the matter without such a consultation and having consulted and been instructed to arrest Kijonka he had a reasonable basis for believing that he had probable cause to make the arrest. *Id.* at *7; *Wollin v. Gondert*, 192 F.3d 616, 624 (7th Cir. 1999); *Arnsberg v. United States*, 757 F.2d 971, 981 (9th Cir. 1985). Consulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, *Womack v. City of Bellefontaine Neighbors*, 193 F.3d 1028, 1031 (8th Cir. 1999); *E-Z Mart Stores, Inc. v. Kirksey*, 885 F.2d 476, 478 (8th Cir. 1989), but it goes far to establish qualified immunity. Otherwise the incentive for officers to consult prosecutors—a valuable screen against false arrest—would be greatly diminished.

For these reasons, we affirm the dismissal of the suit against Seitzinger, but reverse the dismissal of the suit against Rietz and the order relinquishing jurisdiction over the supplemental state-law claims, and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

No. 03-3158                                                 7

A true Copy:

     Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*