# STEVE TYSON, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Criminal No. 2011-0009

Supreme Court of the Virgin Islands

August 27, 2013

KELE C. ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

TERRYLN M. SMOCK, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 27, 2013)

SWAN, *Associate Justice*. Appellant, Steve Tyson, appeals his convictions for assault in the third degree, pursuant to title 14, section 297(2) of the Virgin Islands Code; for unauthorized possession of a firearm during the commission or attempted commission of a crime of violence, under title 14, section 2253(a) of the Virgin Islands Code; and for discharging a firearm, under title 23, section 479(a) of the Virgin Islands Code. Tyson argues that the trial court erred when it denied his Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 because: (1) there was insufficient evidence to sustain a conviction on third degree assault; (2) Tyson's Sixth Amendment right to confront a witness was violated when the trial court admitted in evidence a scientific report even though one of the two signatories to the report, who also conducted the scientific test that generated the report, did testify; and (3) the People failed to prove that Tyson was not licensed to carry a firearm everywhere in the Virgin Islands. For the reasons explicated below, we affirm in part and reverse in part the judgment of the trial court.

## I. FACTS & PROCEDURAL HISTORY

The incident which prompted Tyson's conviction occurred on June 30, 2010, while Tyson was visiting his girlfriend, Letisha Rabsatt ("Letisha"), at her parent's home in the Estate Frydendahl area of St. Thomas. (J.A. at 45-46.) While Tyson was sitting in a red Honda Civic vehicle ("Honda Civic") in the yard area of the property, Linton Rabsatt ("Rabsatt"), Letisha's brother, drove onto the property's driveway in a Ford F-150 truck. (J.A. at 46-47.) According to Rabsatt's testimony, while he was reversing onto the driveway, his truck slid and slightly struck the Honda Civic in which Tyson was sitting. (J.A. at 47.) Rabsatt immediately exited his truck and started excoriating and berating his sister while simultaneously reminding her that their parents did not want Tyson at the house because of a previous altercation involving Tyson. (J.A. at 48.)

541

Tyson departed the property in his vehicle but stopped mid-way on the public road leading from the Frydendahl property and immediately warned Rabsatt not to be at the Frydendahl property when he returned. (J.A. at 49.) Rabsatt responded to Tyson's directive by stating that he would be on the property when Tyson returned because he, Rabsatt, had a right to be on the property. (J.A. at 49.)

Tyson left the area and returned approximately fifteen minutes later. (J.A. at 50.) When he returned, he stopped on a hill in proximity to the Frydendahl property and started menacingly, to make a loud noise with the engine of his vehicle. (J.A. at 51.) According to Rabsatt's testimony, when Rabsatt made eye contact with him, Tyson appeared to be enraged. Shortly after, Tyson drove to a lower section of the public road approximately fifty yards away from the Rabsatts' house and stopped in an area where there was abundant vegetation and trees. (J.A. at 52.) At this instant, Rabsatt was unable to see Tyson; however, Rabsatt testified that he was able to observe the Honda Civic through the trees. (J.A. at 53.) Rabsatt then drove to the top of the road in proximity to his parents' house in order to obtain an enhanced view of the Honda Civic. (*Id.*)

Rabsatt further testified that he subsequently heard four shots fired from the direction where the Honda Civic was located. (J.A. at 54.) Rabsatt asserted that he did not hear any of the shots passing or that may have passed in proximity to him or to his parents' house. (J.A. at 71.) However, when Rabsatt initially heard the shots, he secreted himself closer to his truck which was parked near the upper part of the house where he was previously standing. (J.A. at 77.) Immediately after the shots were fired, the same Honda Civic hurriedly departed the area. (J.A. at 63.) Rabsatt then called the police. (J.A. at 63.) When the police arrived, Rabsatt directed them to the area where the Honda Civic was parked and from where the shots were discharged. (J.A. at 64.) Tyson returned to the Rabsatts' home during the time the police officers were conducting their investigation of the reported gunshots. (J.A. at 64.)

Rabsatt identified Tyson from a photo array as the person who was at the Rabsatts' house in a Honda Civic, and whom Rabsatt believed discharged the gun shots. (J.A. at 17.) Tyson was arrested and charged in a three-count Information with third degree assault in violation of title 14, section 297(2) of the Virgin Islands Code, unauthorized use of a firearm during the commission of a third degree assault in violation of title 14, section 2253(a) of the Virgin Islands Code and discharging a firearm in

violation of title 23, section 479(a) of the Virgin Islands Code. (J.A. at 15.)

A jury trial commenced on December 6, 2010. (J.A. at 18.) During trial, and in addition to Rabsatt's testimony, Forensic Detective Allen Lans ("Lans") testified that bullet shell casings were found in the area in which Rabsatt indicated he saw the Honda Civic and from which area the four shots were discharged. (J.A. at 92.) Lans further testified that the casings he retrieved from the area where the Honda Civic was previously parked were shiny, and based upon his experience and the condition of the casings, he concluded they were recently discharged from a firearm. (J.A. at 94-95.) Corporal Michelle Potter, the custodian of evidence for the Virgin Islands Police Department, testified that spent casings from a nine-millimeter firearm were retrieved from the Estate Frydendahl area and transported by Detective Lans to the police department. (J.A. at 85.)

At the police department, Detective Lans utilized a firearm kit to conduct a test for gunshot residue on Tyson's person. (J.A. at 103.) Lans testified that he took samples from Tyson's right palm, the back of his right hand, his left palm, and the back of his left hand. (J.A. at 104.) Detective Lans then forwarded the same kit to the RJ Lee Group analytical laboratory in Pennsylvania. (J.A. at 119.) Alford Schwoeble ("Schwoeble"), a forensic scientist at RJ Lee Group, testified that he received the gunshot residue kit from Detective Lans on July 6, 2010. (J.A. at. 129.) Schwoeble conducted the required test on the items in the kit and concluded that Tyson had gunshot residue on him. (J.A. at 131.) Schwoeble prepared a written report on his findings from his examination of the items in the firearm test kit. The report was signed by Schwoeble and his manager Helena Foster. (J.A. at 133.)

Elfreda Robinson, the supervisor of firearms for the St. Thomas, St. John and Water Island District testified that she conducted a record search relating to Tyson's licensure for the islands of St. Thomas, St. John and Water Island. (J.A. at 81-82.) Robinson further testified that a record search disclosed that Tyson was not licensed to carry a firearm in this district. (J.A. at 83.) There was no testimony elicited or other evidence offered regarding Tyson's licensure to carry a firearm in the St. Croix District. At the close of the People's case, the defense made a Rule 29 Motion for Judgment of Acquittal and argued that the People failed to meet its burden on the third degree assault charge. (J.A. at 145.) No argument was made by the defense concerning the other two charges,

although Tyson made general arguments that there was insufficient evidence that he fired a weapon. (J.A. at 145-49.) The trial court orally denied the Rule 29 Motion. (J.A. at 149.) At the conclusion of the trial, the jury returned verdicts of guilty on all charges. (J.A. at 220.) The trial court entered its Judgment and Commitment on January 31, 2011. Tyson was sentenced to three years imprisonment on the third degree assault charge, to be served concurrently with the fifteen years imprisonment imposed for the charge of unlawful possession of a firearm.[1] (J.A. at 12.) On February 4, 2011, Tyson filed this appeal.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Beachside Assocs., LLC v. Fishman*, 53 V.I. 700, 706 (2010); *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (citing *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)). The Superior Court entered a final judgment and commitment in this matter on January 31, 2011; therefore, this Court has jurisdiction over Tyson's timely appeal.

## III. STANDARD OF REVIEW

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008). If there is a challenge to the sufficiency of the evidence presented at trial, we will apply a highly deferential standard of review to the jury's verdict. *Castor v. People*, 57 V.I. 482, 488 (V.I. 2012); *accord United States v. Kellogg*, 510 F.3d 188, 202 (3d Cir. 2007).

---

[1] Count III pertaining to the unlawful discharge of a firearm was deemed merged with the unlawful possession charge for purposes of sentencing, and no separate sentence was imposed thereon. (J.A. at 12.)

## IV. ISSUES

A.   Whether the People presented sufficient evidence to sustain a conviction of Tyson for the crime of third degree assault;

B.   Whether Tyson's Sixth Amendment right to confront witnesses against him was violated when the trial court admitted into evidence the gunshot residue test report, even though only one of the signatories to the report, who also performed the scientific test that generated the report, testified at trial; and

C.   Whether the People failed to prove that Tyson was not licensed to carry a firearm in the Virgin Islands because the prosecutor failed to provide documentation that Tyson was not licensed to carry a firearm in the St. Croix District.

## V. DISCUSSION

### A. Sufficiency of Evidence to Convict on Third Degree Assault

■■ Tyson asserts a two-fold argument as it relates to his conviction for third degree assault. First, Tyson argues that the Information charging him with the crime and the trial court's final jury instructions did not track the statute on third degree assault. Second, Tyson argues that the evidence the People presented was insufficient for a conviction on third degree assault. (Appellant's Br. 16.) Tyson failed to develop any argument in his brief concerning his first contention that the language in the Information and final jury instruction did not properly inform Tyson or the jury regarding the elements of assault under Virgin Islands law. Because that argument is deemed to be waived, we will not address that issue. See V.I.S.CT.R. 22(a)(5); V.I.S.CT.R. 22(m).[2]

Nevertheless, Tyson's primary contention is that there was insufficient evidence to convict him of third degree assault, which includes his assertions regarding the necessary elements for a conviction of assault in

---

[2] V.I.S.CT.R. 22(a)(5) provides that the appellant's brief "shall contain . . . [a]n argument" as to each issue raised, which "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Failure to include such argument results in waiver of those issues for purposes of appeal, pursuant to V.I.S.CT.R. 22(m). *Williams v. People*, 56 V.I. 821, 826 n.5 (V.I. 2012).

the third degree. (*See* Amended Appellant's Br. 16-23.) Tyson argues that there must be a touching as required for a battery or an attempt to touch as required for the crime of assault in order to have an assault and battery under Virgin Islands law. However, while Tyson presents arguments with respect to both the crimes of assault and battery, there is no need for us to address the crime of battery because that crime was not charged in the Information. Tyson was only charged with the crime of assault.

At the close of the People's case, Tyson made a Rule 29 Motion for Judgment of Acquittal that was denied. A Rule 29 Motion may only be granted where there is insufficient evidence to sustain a conviction. FED. R. CRIM. P. 29(a). Therefore, in determining the issue of whether there was sufficient evidence to convict Tyson on the third degree assault charge, we will examine whether the People presented sufficient evidence to prove that Tyson made a "threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery" upon Rabsatt with a deadly weapon as provided in 14 V.I.C. §§ 291(2) and 297(2).

"When appellants challenge the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009); *see also Ramirez v. People*, 56 V.I. 409, 416-17 (V.I. 2012). The jury's verdict will be upheld if there is substantial evidence from which a reasonable trier of fact could find, beyond a reasonable doubt, the essential elements of the crime. *Christopher v. People*, 57 V.I. 500, 514-15 (V.I. 2011); *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008); *Ramirez*, 56 V.I. at 417 (citing *Elizee v. People*, 54 V.I. 466, 475 (V.I. 2010)). In making this determination, we do not judge the credibility of a witness nor weigh the evidence. *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009) (citing *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1994)).

In this case, the alleged victim, Rabsatt, testified that Tyson warned him not to be at the same residence when Tyson returned. Rabsatt also testified that when Tyson returned to the area of Rabsatt's parent's house, he stopped in an area near some trees that was about fifty feet away from the house. Rabsatt testified that he was able to observe Tyson's Honda Civic through the trees and vegetation but was unable to see Tyson. (J.A. at 52). While he admittedly heard the noise of gunshots, Rabsatt further

546

testified that he did not hear any of the bullets pass the area in proximity to where he was standing or pass near his parents' house. Rabsatt further testified that he did not see anyone fire shots at him.

The following excerpt from the trial transcript illuminates and highlights Rabsatt's responses to the pertinent questions:

[DEFENSE COUNSEL] Q. Upon hearing, allegedly hearing shots, what did you do?

[WITNESS] A. I didn't do nothing.

Q. You didn't do anything? Did you check your yard for casings?

A. I did not check my yard for casings. I honestly heard them. Like I said, nothing did not come by me. Nothing came by my house or anything like that so when I heard the shots, I just stepped back where my truck was at because my truck was parked on the upper part.

. . . .

Q. Was there any damage to your truck?

A. No.

Q. Any damage to the house?

A. No.

Q. Were you shot?

A. No.

Q. Did you hear any bullets coming up the hill?

A. No.

Q. More specifically, did you see Mr. Tyson firing a gun?

A. No.

(J.A. at 76-77.) Accordingly, Rabsatt's testimony did not present sufficient evidence to prove that Tyson had an "immediate intention coupled with an ability to commit a battery" upon him. Indeed, the Honda Civic was not near Rabsatt when it returned to the Frydendahl area. Importantly, Rabsatt was unable to view Tyson once he drove behind the trees, and the shots Rabsatt heard were not discharged into the immediate area where Rabsatt was located. There is insufficient evidence to prove that the shots Rabsatt heard by the trees fifty feet away were discharged in an effort to assault him or that Tyson indeed fired the shots at him.

██ While the evidence indicates that Rabsatt and Tyson engaged in a verbal altercation earlier that day, during which Tyson warned Rabsatt

547

to leave his parents' home before Tyson returned, the People failed to present any direct evidentiary linkage between Tyson's vague threat and the shots Tyson allegedly fired in the general area where Rabsatt was located. *See, e.g., Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) ("A merely verbal threat of indefinite action in the indefinite future is not an assault."). Rabsatt's testimony that he, Rabsatt, moved closer to his truck after the shots were fired, provides no proof whatsoever that Tyson had an immediate intention coupled with an ability to commit an assault upon Rabsatt. Importantly, other than Rabsatt's testimony, the People offered no evidence in support of the charge of third degree assault in this case. Therefore, the People presented insufficient evidence to prove the elements of third degree assault. Accordingly, we conclude that the trial court erred in denying Tyson's Rule 29 Motion for Judgment of Acquittal on this charge.

## B. Tyson's Sixth Amendment right to confront a witness was not violated when the trial court admitted into evidence a laboratory report regarding which one of the signatories of the report did not testify

■ Tyson argues that his Sixth Amendment right to confront witnesses testifying against him was violated because Helena Foster, one of the signatories to the report from the analytical laboratory in Pennsylvania, was not available for cross examination. The Sixth Amendment's Confrontation Clause gives the accused the right "[i]n all criminal prosecutions . . . to be confronted with the witnesses against him." The United States Supreme Court held in *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), that the Clause permits admission of "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." The Supreme Court subsequently concluded that this rule applies to forensic evidence and held in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, qualified as "testimonial" for Confrontation Clause purposes. "Absent stipulation, the Court ruled, the prosecution may not introduce such a report without offering a live witness competent to testify to the truth of the statements made in the report." *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2709,

180 L. Ed. 2d 610 (2011) (citing *Melendez-Diaz*, 557 U.S. at 328). The Supreme Court recently reiterated in *Bullcoming* that under the Confrontation Clause it is impermissible to have a substitute scientist testify concerning a laboratory report involving analyses in which the testifier did not perform the test personally, unless the scientist conducting the laboratory test is unavailable at trial and the accused previously had an opportunity to cross examine the same scientist. *Id.* at 2710.

There was no confrontation clause issue in this case. Schwoeble testified that he received the gunshot residue kit, conducted the necessary tests, and signed the report. Schwoeble was available to testify at the trial, and did so. The defense had an opportunity to cross examine him. Helena Foster signed the report as Schwoeble's manager. The testimony related to Helena Foster's signature was as follows:

> [DEFENSE COUNSEL] Q. Okay? In addition, you did not personally do these tests; did you?
> [WITNESS] A. Yes, I did.
> Q. You did this test?
> A. Absolutely.
> Q. And what role did Ms. Helena Foster play because I noticed she signed the report before you did.
> A. Well, I was probably out testifying and signed it when I came back but I had finished the work before I left.
> Q. And the role of the manager is what, as it relates to the reports?
> A. She oversees the daily operation of the department.
> Q. She was verifying the accuracy of the report before you even signed it?
> A. Well, I would tell her verbally just put the report together and I'll sign it when I return. I had already done the relocation and confirmation and gave her that message before I left.

(J.A. at 133-34.)

   ■ Importantly, Foster only signed the report as the Supervisor of Daily Operations of the department. She did not sign as the person who actually conducted the forensic testing of the evidence or who reached the conclusions expressed in the report. Therefore, her failure to testify at trial did not affect Tyson's constitutional rights. Schwoeble actually conducted the forensic test, signed the report and testified at the trial about the

549

content of the report that he personally generated. Consequently, there was no deprivation of the defendant's right of confrontation in this case.

## C. The People failed to prove that Tyson was not licensed to carry a firearm in the Virgin Islands since they did not prove that Tyson was not licensed to carry a firearm in the St. Croix district

■ Tyson was charged with unauthorized possession or use of a firearm during the commission or attempted commission of a crime of violence under title 14, section 2253(a) of the Virgin Islands Code. This statute provides:

> Whoever, *unless otherwise authorized by law*, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant . . . .

(emphasis added). The People were required to present evidence that Tyson was not licensed to carry a firearm in the territory of the Virgin Islands. *See generally Ambrose v. People*, 56 V.I. 99, 106-08 (V.I. 2012). However, the supervisor of firearm licensing for the district of St. Thomas-St. John testified only that Tyson was not licensed to carry a firearm in the St. Thomas-St. John District and Water Island.

■ Tyson's argument resting upon the absence of testimony presents a sufficiency of the evidence issue rather than a challenge based upon the Sixth Amendment's Confrontation Clause.[3] We have previously established that in such challenges we will review all the evidence in a light most favorable to the People and consider whether a reasonable trier of fact would find the elements of the crime beyond a reasonable doubt. *Christopher*, 57 V.I. at 514-15. In this prosecution, no evidence was presented regarding whether Tyson had a license to carry a firearm in the St. Croix District. *Cf. Ambrose*, 56 V.I. at 106 (certificates presented from

---

[3] Tyson's argument that there is a Confrontation Clause violation present in this case is not applicable because there was no testimony actually presented that he could have challenged regarding licensing in the St. Croix district. The People only offered evidence of Tyson's failure to be a licensed firearm owner in the St. Thomas, St. John, Water Island District through the testimony of Elfreda Robinson, Firearm Director of that, District. There was no testimony offered or certificate admitted regarding Tyson's licensure in the St. Croix District. (J.A. 81-84.)

St. Thomas and St. Croix Districts). Therefore, the People did not present sufficient evidence for a jury to make a rational finding that Tyson was not licensed or authorized to carry a firearm in the Virgin Islands. We will therefore reverse Tyson's conviction on Count II.

## VI. CONCLUSION

■ We conclude that there was insufficient evidence presented to the jury to support a finding of guilty on the charge of third degree assault. Although we find that there was no Confrontation Clause deprivation arising from the presentation of scientific evidence in this case, we find that the People did not produce sufficient evidence to support a finding that Tyson was not authorized to carry a firearm in the Territory because there was no proof confirming that he was not licensed in the St. Croix District to possess or carry a firearm. Therefore, we find that the trial court erred when it denied Tyson's Rule 29 Motion for Judgment of Acquittal as to Count I, third degree assault and Count II, possession of a firearm during the commission or attempted commission of a crime of violence. Consequently, we reverse Tyson's convictions on Counts I and II of the Information. However, we find that sufficient evidence was presented on Count III, discharging a firearm, because Tyson tested positive for gunshot residue on his person on the same day of the shooting and bullet casings were recovered from the same area where his car was parked when the shots were fired. Therefore, we affirm Tyson's conviction on Count III, discharging a firearm under title 23, section 479. Since no separate sentence was imposed on Count III, we remand this matter to the trial court for sentencing on that conviction.