THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLEOTHA WHITE, Defendant-Appellant.

Third District   No. 76-537

Opinion filed February 28, 1978.

Robert Agostinelli and Mark W. Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong and John X. Breslin, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Cleotha White appeals from a conviction of armed violence following a jury trial in the circuit court of Will County. He was sentenced to a term of 1 to 3 years in the penitentiary.

On appeal in this court, defendant had at first raised two issues but has now filed a motion to withdraw one of the issues. The issue which defendant has moved to withdraw was the contention that the trial court erred in denying the defense counsel a statutory right to directly question the prospective jurors. The motion was made as a result of the decision of the Illinois Supreme Court in the case of *People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602, in which case the supreme court of this State determined specifically that the statutory provision purporting to grant litigants the power to question the jurors directly was unconstitutional as a legislative infringement upon the powers of the judiciary and is, accordingly, void. For the reasons stated, therefore, we grant the motion of defendant to withdraw this issue in the cause on appeal.

The remaining issue asserted by defendant is the contention that defendant's conviction for armed violence must be reversed for the

reason that the People failed to produce enough evidence from which the jury could properly conclude that the victims of the alleged assault reasonably apprehended receiving a battery.

It appears from the record that defendant, on October 22, 1975, at approximately 2 a.m. sped past an automobile occupied by Illinois State Police (which was unmarked) on a street in Joliet. The defendant at that time was driving a 1967 Chevrolet. The two officers in the police car followed the automobile occupied by defendant. They watched as he, a large black man, got out of his car on the driver's side and proceeded to the rear of the automobile in view of the officers. The defendant apparently walked behind his car and toward the back door of an apartment building which was located a short distance off the roadway. State Trooper Dodwell said that, at the time, he saw defendant draw his revolver and he shouted to Trooper Perona, "The son-of-a-bitch has got a gun." Trooper Perona opened the squad car door and rolled out of the car, and proceeded to the rear of the squad car, crouching down behind the car. At that time, the officers were approximately 32 to 35 feet from defendant when he fired the gun. Trooper Perona confirmed that he thereafter fired two shots at the defendant as defendant was fleeing into the apartment. One of the officers, Dodwell, pursued the man to the door, but Officer Perona restrained his partner from proceeding into the building until reinforcements arrived.

Other police officers thereafter began to arrive on the scene. The 1967 Chevrolet, from which defendant had exited, was searched and found to be registered in defendant's name. In the car they found a brief case containing papers belonging to defendant. One of the papers listed defendant's address as apartment 101, 358 Broadway, the building into which the man with a gun had run. The officers proceeded to the apartment.

After the police knocked on the door of the apartment, a woman, Oralee Brown, answered the door. They found defendant in bed and he was placed under arrest. The State Troopers identified him as the man who had fired the shots.

Defendant presented testimony which sought to establish that, on the evening of October 21, 1977, defendant went to bed with Oralee Brown at approximately 9:30 p.m. and slept until the police awoke him shortly after 2 a.m. the following morning. He denied he had committed the offense. A certified copy of a prior felony conviction of defendant was introduced by the People for impeachment purposes.

The testimony of two witnesses was offered by the People in rebuttal, for the purpose of impeaching the testimony of Oralee Brown who had stated in the trial as a defense witness, that she had been with him all

night. The rebuttal evidence indicated that Mrs. Brown had told a policeman, on the night in question, that defendant had just come in shortly before the police arrived.

Defendant contends that, on the basis of the evidence in the record, the jury could not conclude that the officers reasonably perceived the possibility of an imminent battery from the conduct of defendant. Defendant contends that the evidence required to prove the charge must establish that the defendant placed the officers in reasonable apprehension of receiving bodily harm; that defendant used a deadly weapon and that defendant was armed with a dangerous weapon. In support of defendant's contention, defendant cites *People v. Holverson* (2d Dist. 1975), 32 Ill. App. 3d 459, 336 N.E.2d 88, in which the court stated that the determination, of whether the alleged assault victim had a reasonable apprehension of receiving a battery, was a question of fact for the jury. That case actually supports the argument of the People. In that case, the defendant had argued that there was not sufficient proof that the complainant reasonably apprehended a battery. The appellate court in that case refused to reverse the finding of a trial judge, that the evidence was sufficient to prove the defendant guilty of assault beyond a reasonable doubt. The evidence in the instant case was much stronger than in the *Holverson* case.

It is clear that this issue was properly submitted for the determination by the jury. As stated in *People v. Brodanex* (3d Dist. 1976), 41 Ill. App. 3d 199, 200, 353 N.E.2d 446, 447:

> "It would make mockery of the constitutional right of trial by jury for an appellate court to substitute its judgment for that of a jury. The evidence here supports the conviction."

In the instant case, Trooper Dodwell observed the first muzzle flash to be "round," which indicated that the weapon was pointed directly at him when it was fired. Also, the muzzle flash could be observed by the troopers before the bullet or projectile would travel from the gun to the position of the officer. An officer could certainly apprehend the battery from that fact and circumstance. The fact that the officers proceeded cautiously in fear for their bodily safety indicates also that the officers apprehended that they might suffer from a bullet wound if they were not careful in their conduct in pursuing defendant. The circumstance, also, that Trooper Perona fired two shots from his service revolver indicates, as argued by the State, that Perona believed that the situation involved a life or death situation which involved the use of deadly force. When Perona told his partner, Trooper Dodwell, not to search the building without reinforcements, it indicated the danger which both troopers perceived from the armed defendant who had fired two shots in their direction.

Under the circumstances and facts which were developed in this case,

it is clear that the evidence at the trial was sufficient for the jury to conclude, beyond a reasonable doubt, that the victims of the aggravated assault reasonably apprehended receiving a battery from defendant who was firing his gun.

For the reasons stated, therefore, the judgment of the Circuit Court of Will County in this case is affirmed.

Affirmed.

BARRY, P. J., and SCOTT, J., concur.