THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KEITH G. KETTLER, Defendant-Appellant.

Fourth District   No. 4—83—0079

Opinion filed January 5, 1984.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Anthony B. Cameron, State's Attorney, of Quincy (Robert J. Biderman and Thomas W. Lacy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

Following a jury trial in the circuit court of Adams County, defendant Keith Kettler was convicted of two counts of aggravated assault (Ill. Rev. Stat. 1981, ch. 38, par. 12—2(a)(6)) and acquitted of one count of aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(7)). In this appeal, defendant argues, *inter alia*, that the State failed to prove him guilty of the crime of aggravated assault beyond a reasonable doubt. We agree and reverse.

On May 31, 1982, defendant was discharged from a sentence of periodic imprisonment he was serving at the Adams County jail on unrelated charges. That evening, defendant and another companion went to a local bar to celebrate defendant's release and following a few drinks, defendant left the bar and proceeded to his home in Quincy. Before defendant arrived at home, however, he was arrested by the Quincy police department for driving under the influence of alcohol and taken back to jail. At approximately 1:30 a.m., defendant

was released on bail and taken home by his brother, Gerry Kettler.

Defendant and his brother returned home around 2 a.m., had a short exchange with their mother, and then defendant went to his bedroom. Gerry and Mrs. Kettler remained downstairs in the living room until they heard the defendant gagging in the bathroom. Upon investigation, an empty bottle of Librium was found in the bathroom waste can and, fearing an overdose, Gerry Kettler called the Adams County ambulance service for assistance. In the meantime, defendant had returned to his bedroom and was apparently unconscious, as the testimony of Gerry Kettler indicates that he was not able to awaken him.

Two paramedics arrived at the Kettler residence shortly thereafter but were initially unsuccessful in waking the defendant. One of the paramedics finally broke an ammonia capsule under the defendant's nose and seconds later the defendant reacted violently. Defendant attacked one of the paramedics, using karate-type blows and mumbling unintelligible sounds, while the other paramedic radioed for police assistance. Within minutes, several Quincy policy officers arrived at the Kettler residence but, by the time the police had arrived, the paramedics had wrestled the defendant to the ground. Defendant was then handcuffed, placed face down on a stretcher, and transported to St. Mary's Hospital in Quincy.

The diagnosis under which defendant was admitted to the hospital was an acute overdose from a combination of Librium, an anti-anxiety drug, and alcohol. At the hospital, defendant was strapped to a bed with restraints and some of the Quincy police officers were asked to remain with the hospital personnel while the defendant's stomach was pumped. Officers Ronald Grant and Ed Moon remained with the personnel and both testified that the defendant was restrained with straps across his arms and legs.

Prior to the stomach pumping procedure, defendant regained partial consciousness and noted "high powered lights all around and people, you know, grabbing on me, around my head." According to Officer Moon, who is 6 feet 7 inches tall, defendant looked up and stated, "Moon, I'm going to kill you, you dirty son of a bitch." Moon testified that this made him feel apprehensive. (Defendant is 5 feet 7 inches tall and weighs 160 pounds.) Next, the defendant told 5 foot 5 inch tall officer Ron Grant that "I'll kill you, you little son of a bitch." Grant testified he was sure that defendant meant what he was saying.

On June 1, 1982, defendant was charged by information with one count of aggravated battery for an alleged biting of one of the paramedics, and two counts of aggravated assault for the threats to Offi-

cers Moon and Grant. Defendant was tried by a jury, and, as indicated, was acquitted of the battery charge but convicted of the assault charges. During the course of the jury deliberations, the jury foreman sent a note to the trial judge asking whether "the apprehension of the officers have to be at the time of the alleged violation or can it be in the future." After conferring with opposing counsel, the trial judge brought the jury back into the courtroom and acknowledged the receipt of the communication but refused further instructions. The jury later returned guilty verdicts on the assault charges and defendant was sentenced to one year's probation with conditions of public service work and payment of court costs.

■ Defendant's primary argument on appeal is that the State failed to prove him guilty of the crime of aggravated assault beyond a reasonable doubt because his actions could not have placed the officers in a reasonable apprehension of receiving a battery since he did not have the present ability to commit a battery. The State responds that the requirement of "present ability" is not an element of the offense of assault and further that there is ample testimony regarding the nature of the restraints that could allow the jury to conclude the victim's apprehension was reasonable. Although we note that the defendant's post-trial motion was stricken by the trial court as not timely filed, the question of whether he was convicted of the crime of aggravated assault beyond a reasonable doubt is a clear exception to the general waiver rule. *People v. Koss* (1977), 52 Ill. App. 3d 605, 367 N.E.2d 1040.

In Illinois, prior to 1961, the crime of assault was defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Ill. Rev. Stat. 1961, ch. 38, par. 55.) This definition of assault was similar to the common law offense of assault which was defined as an attempt to commit a battery. (Perkins, Criminal Law 114 (2d ed. 1969).) In 1961, the legislature redefined the crime of assault by substituting in place of the prior definition, a definition of assault similar to the common law tort of assault. At common law, the tort of assault was defined as an intentional act wrongfully placing another in apprehension of receiving an immediate battery. (Perkins, Criminal Law 114 (2d ed. 1969).) Similar to the common law definition, section 12—1(a) of the Criminal Code of 1961 defines assault as follows:

> "A person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery." Ill. Rev. Stat. 1981, ch. 38, par. 12—1(a).

The committee comments to section 12—1 indicate that there were three fundamental changes in the definition of assault: section 12—1 eliminated the "attempt" requirement, the "present ability requirement," and added the tort concept that the victim reasonably apprehend a battery. (Ill. Ann. Stat., ch. 38, par. 12—1, Committee Comments, at 406 (Smith-Hurd 1979).) The comments to this section explain the reasons for the second and third changes:

"The third change in Illinois law made by section 12—1 is the addition of the element '*** which places another in reasonable apprehension of receiving a battery.' This is a traditional element of assault (borrowed from the law of torts). At common law an assault could be either an attempted battery, or an unlawful act which placed another in reasonable apprehension of receiving a battery even though no intent to commit a battery, and therefore no attempt, was involved. It is the intent of sections 8—4 (Attempt) and 12—1 (Assault) to identify attempted batteries as attempts, governed by the same rules that govern all attempts, and conduct which is without lawful authority and which places another in reasonable apprehension of receiving a battery as an assault, without regard to present ability or specific intent to commit a battery except as they may bear on the reasonableness of the apprehension. If the conduct is performed under any one of the three circumstances listed in section 12—2, it is aggravated assault." Ill. Ann. Stat., ch. 38, par. 12—1, Committee Comments, at 406 (Smith-Hurd 1979).

■ From our review of the record, we conclude that the evidence of the officers' apprehension of a battery was insufficient, as a matter of law, to convict the defendant of the crime of aggravated assault. Although the officers did testify that they were apprehensive, we believe the evidence of defendant's physical restraint belies any conclusion that their apprehension was reasonable.

The decisions to which we have been referred discussing the crime of assault involve factual situations, unlike the present, where the apprehension of harm was both imminent and reasonable. (See *People v. Preis* (1963), 27 Ill. 2d 315, 189 N.E.2d 254; *People v. Rynberk* (1980), 92 Ill. App. 3d 112, 415 N.E.2d 1087; *People v. Chrisopulos* (1980), 82 Ill. App. 3d 581, 402 N.E.2d 912; *People v. Harkey* (1979), 69 Ill. App. 3d 94, 386 N.E.2d 1151; *People v. White* (1978), 57 Ill. App. 3d 414, 373 N.E.2d 109.) In our view, the only way defendant's conviction for aggravated assault could stand is if we read the statute as making criminal a threat of a future battery, as distinguished from a threat of an immediate battery; that is, if the officers

believed that there was a possibility defendant would carry out the threat after he was released from the hospital. We have discovered no authority holding that a threat of future violence is sufficient to constitute an assault and, in fact, we find the weight of authority to the contrary.

In Perkins, Criminal Law 132 (2d ed. 1969), it is stated that "[a] threat of future violence is obviously insufficient for an assault, because it is neither an attempt to commit a battery nor an act placing the other in apprehension of receiving an *immediate* battery." See also C. Torcia, 2 Wharton's Criminal Law sec. 180, at 302 (14th ed. 1979): "the apprehended contact must be imminent;" Restatement (Second) of Torts sec. 29 (1965): "To make the actor liable for an assault he must put the other in apprehension of an imminent contact."

■■■ By well-settled principles of law, a criminal statute is to be strictly construed in favor of the accused, and nothing is to be taken by intendment or implication beyond the obvious or literal meaning of the statute. (*People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171; *People v. Eagle Food Centers, Inc.* (1964), 31 Ill. 2d 535, 202 N.E.2d 473.) Applying these rules, we hold that section 12—2(a)(6) of the Criminal Code of 1961 does not reach the apprehension of a battery as a result of some threat of harm at an unspecified future date and that, under the circumstances, no reasonable person would have felt apprehensive of an immediate battery as a result of a threat made from a person who was strapped to a hospital bed and about to have his stomach pumped.

Reversed.

GREEN and MILLER, JJ., concur.