2019 IL App (1st) 170546-U

No. 1-17-0546

December 16, 2019

First Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 10738 |
| | ) | |
| TACOREY KILLEBREW, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Griffin and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*: One of defendant's convictions for aggravated battery is reduced to the lesser-included offense of aggravated assault where the evidence was insufficient to sustain his conviction. The trial court's failure to admonish the jury in accordance with Illinois Supreme Court Rule 431(b) did not rise to the level of plain error because the evidence supporting defendant's convictions is not closely balanced. The State's closing argument did not deprive defendant of a fair trial, and the trial court did not err by dismissing defendant's posttrial claim of ineffective assistance of counsel without an evidentiary hearing. We impose a two year sentence for aggravated assault to run concurrent with the other sentences.

¶ 2    Following a jury trial, defendant Tacorey Killebrew was convicted on two counts of aggravated battery against a correctional institution employee and two counts of resisting or obstructing a correctional institution employee. He was sentenced to five years' imprisonment on each of the aggravated battery counts and two years' imprisonment on each of the resisting or obstructing counts. All of his sentences ran concurrently. Defendant now appeals, arguing that (1) the evidence was insufficient to convict him on one of the aggravated battery counts, (2) the trial court violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (3) the State's closing argument deprived him of a fair trial, (4) the trial court did not adequately inquire into his posttrial claims of ineffective assistance of counsel, and (5) the jury's verdict was tainted by the cumulative effect of the alleged errors. We reduce one of defendant's aggravated battery convictions to the lesser-included offense of aggravated assault, vacate the sentence on that count, and sentence defendant to time served on the aggravated assault. However, we affirm the trial court's judgment in all other respects.

¶ 3                                    BACKGROUND

¶ 4    After an incident at the Cook County jail on June 28, 2016, defendant was charged by indictment with aggravated battery against a correctional institution employee (720 ILCS 5/12-3.05(d)(4)(i), (g)(3) (West Supp. 2015)) (counts I-V), and resisting or obstructing a correctional institution employee (720 ILCS 5/31-1(a-7) (West 2016)) (counts VI-VIII). Counts I through III alleged that defendant "knowingly caused or attempted to cause" correctional officers Louis Hovel, William Zurella, and Joseph Baluk to come into contact with bodily fluids by "throwing, tossing or expelling" urine at them. Counts IV and V alleged that defendant knowingly caused bodily harm to Hovel by biting him. Counts VI through VIII alleged that defendant knowingly

resisted and proximately caused injury to Hovel, Zurella, and Baluk while they were performing their official duties. The State proceeded on count III (aggravated battery of Baluk by urine), count IV (aggravated battery of Hovel by bite), count VII (resisting Zurella), and count VIII (resisting Baluk).

¶ 5 During *voir dire*, the trial court admonished the venire that (1) defendant is presumed innocent, (2) the State maintains the burden of proving defendant's guilt beyond a reasonable doubt, (3) defendant's decision not to testify cannot be held against him, and (4) defendant is not required to prove his innocence or present any evidence. The court asked the venire whether they understood or had "any problems or qualms" about applying the first three principles. None of the potential jurors indicated that they did not understand or accept these principles.

¶ 6 At trial, Baluk testified that he was working as a uniformed correctional officer at the Cook County jail on June 28, 2016. At approximately 1:30 p.m., he was in charge of processing a group of inmates returning from court. The State published several video clips of the jail's surveillance footage from that afternoon, which Baluk identified in court and narrated. Collectively, the clips show Baluk open a gate and escort the returning inmates, including defendant and Latroy Hodges,[1] into a holding cell. All of the inmates are handcuffed with their hands in front of their bodies and chains around their waists. Many of the inmates are also holding the lunch tray that they are given upon returning from court. Defendant does not have a tray, but Hodges has two.

---

[1] Hodges was charged in the same indictment as defendant with three counts of aggravated battery against the correctional officers. Following a separate jury trial, he was convicted on three counts of the lesser-included offense of aggravated assault (720 ILCS 5/12-2(b)(5) (West Supp. 2015)), and sentenced to three concurrent terms of 15 months in prison. This court affirmed Hodges's convictions on direct appeal. *People v. Hodges*, 2019 IL App (1st) 170226-U. He is not a party to this appeal.

¶ 7     Once inside the holding cell, Hodges removes a small item from his waistband and places it in his breast pocket. Baluk then unlocks the holding cell and escorts defendant, Hodges, and several other inmates towards a scanning machine through which they must pass before returning to their housing units. As the inmates line up at the scanning machine, defendant appears to say something to Baluk. The video does not have an audio component, but Baluk testified that defendant asked him for an extra food tray. When Baluk informed defendant that he did not have any food, defendant replied that "the last time somebody told me no, I s*** them down." From his experience as a correctional officer, Baluk understood this as a slang term for throwing feces or urine on someone.

¶ 8     After his conversation with Baluk, defendant walks away and begins talking to Hovel. At this time, Hodges removes a small plastic bottle filled with a yellow liquid from his breast pocket. He shakes the bottle, sniffs it, and places it back in his breast pocket. Defendant then approaches Hodges, and Hodges hands the bottle to defendant. Baluk testified that he observed the hand-off, and that the bottle was a juice bottle from lunch that had been filled with urine.

¶ 9     Defendant immediately removes the cap and confronts several correctional officers with the open bottle. Upon seeing defendant with the urine, the nonofficer jail employees in the area walk away as the uniformed officers begin to surround defendant. Baluk leaves his post at the scanning machine to assist. At times, Baluk appears to be less than 10 feet from defendant.

¶ 10     As defendant engages in a stand-off with the officers, Baluk and others escort the rest of the inmates back into the holding cell. Once the inmates are secured, Baluk radios for assistance and then joins the circle of officers that has formed around defendant. The officers maintain a distance of several feet while defendant continues to speak to them. Baluk testified that defendant

ignored repeated commands to drop the bottle, and instead threatened to "piss down everybody unless he gets a food tray." Baluk understood the expression as a threat to "throw urine in [someone's] face."

¶ 11    Approximately one minute after the last inmate is escorted to the holding cell, Zurella tackles defendant from behind. As he does so, he wraps his arms around defendant's body, arms, and hands. When defendant and Zurella begin to fall, the bottle leaves defendant's hand and slides across the floor. Defendant and Zurella land just off camera.

¶ 12    The video does not show the events that occurred after the tackle, but Baluk testified that the urine "got all over us" because it "either was thrown or dislodged somehow." Then, defendant "flail[ed] and mov[ed] around" while the officers attempted to restrain him on the floor. Baluk injured his hand during the struggle because it got caught in defendant's chains. Baluk also observed defendant biting Hovel's forearm and heard Hovel yell, "he is biting me." Defendant released Hovel's arm only after Baluk struck him twice in the back of the head.

¶ 13    After the officers subdued defendant, Baluk, Hovel, and Zurella went to the hospital for medical treatment. Baluk identified photographs of the injuries to his hand and to Hovel's forearm and knuckles. Baluk also identified several still images from the surveillance video, including one that depicts Hodges and defendant "smiling" as Hodges hands the urine to defendant.

¶ 14    On cross-examination, Baluk testified that defendant was restrained during the entire incident by handcuffs and a "belly chain" that connected to the handcuffs and wrapped around his waist. Baluk also acknowledged that he told a Sheriff's Department investigator on the day of the incident that Zurella's tackle was "what made the urine splash everywhere."

¶ 15 Hovel testified that he was also working as a uniformed correctional officer on the day of the incident. When he arrived to assist Baluk with the returning inmates, he noticed defendant and Baluk "having words" because defendant claimed he had not received any lunch. Defendant was "getting more irate" as the conversation went on, and threatened to "piss [the officers] all down" if they did not give him food. Defendant then obtained a small bottle of "a very dark, yellow liquid" from Hodges, removed the cap, and approached the officers "in a very aggressive manner." According to Hovel, defendant stated, "[I]f I don't get a sandwich now, I am going to piss you all down and it's not even my own piss." Hovel demonstrated for the jury how defendant held the bottle "like he was going to throw the substance" in the bottle. Defendant continued to threaten the officers "very aggressive[ly]," so Hovel believed that defendant was going to throw the urine on them. Then, Zurella tackled defendant from behind and "[t]he urine went everywhere." Hovel and other officers attempted to restrain defendant's legs on the floor, but he "was fighting [them] tooth and nail." During the struggle, defendant bit Hovel on the forearm and right index finger. Hovel identified photographs of his injuries.

¶ 16 On cross-examination, Hovel testified that he "d[id]n't recall" whether Zurella's tackle was "what caused the bottle that [defendant] was holding to fly out." However, he agreed that "[i]t might have been," and testified that he did not see defendant throw the bottle. Hovel also acknowledged testifying in a previous proceeding that Zurella's tackle "caused the bottle to fly out of [defendant's] hand." Hovel also explained that he secured defendant's head against the floor after the tackle, but "wasn't pressing down" or "putting [defendant] in sort of a headlock." Although defendant initially landed facedown, he rolled onto his side and faced Hovel during the

struggle. Defendant was on his side when Hovel removed his hand from defendant's head and defendant bit him.

¶ 17 Zurella testified that he responded to the scene after receiving a radio call about the incident. When he arrived, defendant was holding a container of yellow liquid and saying, "If you come near me, I am going to throw this piss on you." Zurella attempted to approach defendant and knock the container from his hand, but defendant noticed him and told him, "f*** you, if you come near me, I am going to throw this piss on you." When defendant turned his attention to another officer, Zurella tackled defendant from behind. Upon doing so, Zurella "immediately" felt pain in his left shoulder and right forearm, wrist, and hand. He was "not sure" what happened to the urine or whether defendant was still holding the container when they landed.

¶ 18 Defendant "continued to struggle" on the floor, but Hovel, Baluk, and other officers detained him. Afterwards, Zurella was taken to the hospital for treatment and eventually underwent surgery to install a metal plate in his right arm. He was wearing a brace in court and identified photographs of his injuries. On cross-examination, Zurella testified that he did not see defendant attempt to throw the urine.

¶ 19 Edward Barksdale, an investigator for the Cook County Sheriff's Department, testified that he interviewed defendant approximately 2½ hours after the incident. He did not observe any injuries on defendant. On cross-examination, Barksdale acknowledged that he did not examine defendant's wrists or ankles.

¶ 20 The defense rested without presenting evidence.

¶ 21 Prior to closing, the court admonished the jury that the arguments it would hear were not evidence and should be disregarded to the extent they were not consistent with the evidence.

¶ 22    During the State's argument, the prosecutor noted that defendant made repeated threats to "piss [the officers] down," and asserted that his behavior was "[d]isgusting and reprehensible." The prosecutor also stated, among other things, that working as a correctional officer "is not an easy job," and that the officers "didn't deserve what happened to them."

¶ 23    The prosecutor then reviewed the evidence as it pertained to each element of the charges. Addressing the evidence of defendant's intent to commit aggravated battery, the prosecutor displayed the still image of defendant receiving the urine from Hodges and argued that "defendant knew exactly what was going to transpire" because "[y]ou can see the satisfaction on their faces." The prosecutor later displayed a photograph of Baluk's injuries as part of a discussion of the elements of the resisting charges. Next, the prosecutor explained several jury instructions and indicated that they were "up on the Power Point presentation" in the courtroom. Finally, in summation, the prosecutor stated that "defendant's intent was clear" because "[w]e can see it here on his face." Consequently, the prosecutor asked the jury to find defendant guilty of all charges.

¶ 24    In response, defense counsel decried the State's attempt to "play on [the jury's] sympathy for the three officers" and emphasized that the jury must consider only the evidence in determining whether the State proved the charges beyond a reasonable doubt. In contending that the State had not carried its burden, counsel noted that the video did not show defendant throw, toss, or expel the urine from the bottle or that he struggled with the officers on the floor. Counsel also recalled the evidence that defendant was in chains and at the bottom of a "pile" of officers during the struggle. Finally, counsel suggested that defendant could have bitten Hovel on "accident" or in an attempt to breathe because the position of the bite wound on Hovel's forearm was "more consistent" with Hovel having held defendant in a headlock.

¶ 25    In rebuttal, the prosecution again displayed the still image of defendant receiving the urine and reiterated that defendant's intent was clear because he had a "big grin" and a look of "shear and utter delight" on his face at the time of the offense.

¶ 26    After arguments, the court instructed the jurors that they were to determine the facts solely from the trial evidence and to disregard opening statements and closing arguments to the extent they were not supported by the evidence. The court also instructed the jury on aggravated assault as a lesser-included offense of the aggravated battery charges.

¶ 27    During deliberation, the jury asked the court the following three questions: (1) "[W]as the charge of resisting Officer Zurella prior to or after when [defendant] was tackled[?]" (2) "[W]as *** resisting prior [to] or after tackling or both on *** Officer Baluk?" and (3) "Do we have to take [defendant's] stand-off actions in[to] consideration as a cause for his charges?" The parties agreed that these were all questions of fact, so the court instructed the jury to "please continue to deliberate." After further deliberation, the jury found defendant guilty of aggravated battery against Baluk (by urine, count III), aggravated battery against Hovel (by bite, count IV), and resisting or obstructing Baluk and Zurella (counts VII and VIII). Defendant filed a motion for judgment notwithstanding the verdict, which the court denied.

¶ 28    The case proceeded to a sentencing hearing, where defendant stated in allocution that:

"I want to say since you denied the retrial motion my attorney filed, I would like to state ineffective assistance of counsel at this point. That I pointed out that they never used for their argument in closing and opening. One of the jurors went to sleep on cross-examination. I felt like it went against me. That could have been my, know what I'm sayin',

no. But it was litigated and they go back and deliberated they decision together, know what I'm sayin'. I felt like my trial wasn't fair. Violation of my Sixth Amendment."

Consequently, the court passed the case to conduct a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 29    At the *Krankel* hearing, one of defendant's attorneys stated that she did not notice any sleeping jurors. The trial court agreed, stating that it had observed the jury throughout the proceedings and "didn't see it either." With respect to defendant's claim about what was "never used for *** closing and opening," his other attorney explained that defendant had requested she argue that (1) the struggle was not on the video, (2) "multiple officers jumped on top of him," and (3) the location of the bite mark on Hovel's forearm was consistent with defendant being restrained in a headlock. Counsel noted that she in fact made all these points in closing argument. The court found defendant's allegations "not proven," and denied his *pro se* motion.

¶ 30    After arguments in aggravation and mitigation, the court sentenced defendant to five years in prison for aggravated battery against Baluk (count III), five years for aggravated battery against Hovel (count IV), two years for resisting Baluk (count VIII), and two years for resisting Zurella (count VII). All four sentences were to run concurrently. Defendant filed a motion to reconsider, which was denied.

¶ 31                                    ANALYSIS

¶ 32    On appeal, defendant first argues that the State failed to prove him guilty on count III (aggravated battery against Baluk by urine) beyond a reasonable doubt.

¶ 33    When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational

trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. Although the trier of fact's determinations on the weight of the evidence and the inferences to draw from the evidence are entitled to great deference, they are not conclusive or binding on a reviewing court. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Instead, a reviewing court must "carefully examine the record" with appropriate deference to the trier of fact, and reverse where "the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Id.* Stated another way, a conviction must be reversed if the evidence is "so improbable or unsatisfactory that a reasonable doubt remains as to the defendant's guilt." *People v. Harris*, 2018 IL 121932, ¶ 26.

¶ 34 In order to convict defendant of aggravated battery as charged in count III, the State was required to prove that he was (1) an inmate of a penal institution who (2) knowingly caused or attempted to cause (3) an employee of that institution (4) to come into contact with urine (5) by "throwing, tossing, or expelling" it on the employee. 720 ILCS 5/12-3.05(g)(3) (West Supp. 2015). A person "knowingly" causes a result when he is "consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2016).

¶ 35 Here, there is no dispute that defendant was an inmate or that Baluk was a correctional officer who came into contact with urine. Defendant maintains, however, that he did not knowingly throw, toss, or expel the urine because the evidence showed that he lost control of the bottle involuntarily when Zurella tackled him from behind. In response, the State argues that Baluk's contact with the urine was the "natural and probable" result of defendant's conduct, and alternatively, that the evidence supported a conviction under the "attempt" language of the statute

because defendant took a "substantial step" towards the completed offense. See 720 ILCS 5/8-4(a) (West 2016).

¶ 36    The State's position ignores that the statute plainly requires a defendant to throw, toss, or expel the urine. See 720 ILCS 5/12-3.05(g)(3) (West Supp. 2015). Despite defendant's threats to throw the urine, the only testimony that he actually did so was Baluk's equivocal statement that the bottle was "either thrown or dislodged somehow" during the tackle. However, all three officers, including Baluk, testified that they did not see defendant throw the bottle. Additionally, Zurella testified that he was "not sure" what happened to the urine during the tackle, and both Baluk and Hovel acknowledged previously stating that the impact of the tackle was what caused the urine to exit the bottle.

¶ 37    Moreover, the video does not clearly show that defendant threw the bottle or voluntarily released it. Instead, the video shows that Zurella unexpectedly tackled defendant from behind, wrapping his arms around defendant's arms and hands. The bottle was dislodged at the moment of impact, and hit the floor as defendant and Zurella began to fall. Under these circumstances, no rational trier of fact could have found that defendant knowingly threw, tossed, or expelled the urine beyond a reasonable doubt. Accordingly, we find the evidence insufficient to sustain defendant's conviction for aggravated battery against Baluk, and therefore vacate his conviction on count III.

¶ 38    Having so ruled, we must now determine whether to enter judgment on aggravated assault, which the parties agree is a lesser-included offense of aggravated battery as charged in count III.

¶ 39    When a reviewing court finds the evidence insufficient to sustain a conviction, it may enter a judgment on an uncharged offense instead if (1) the uncharged offense is a lesser-included offense of the charged offense, and (2) the evidence supported the uncharged offense. *People v.*

*Kolton*, 219 Ill. 2d 353, 360 (2006). In this context, Illinois courts apply the "charging instrument approach" to determine whether an uncharged offense is included within a charged offense. *People v. Kennebrew*, 2013 IL 113998, ¶ 32. Under this approach, the charging instrument need only lay out a "broad foundation" or "main outline" of the uncharged offense. (Internal quotations omitted.) *Id.* ¶ 30. The uncharged offense need not be an inherent part of the charged offense, and the charging instrument need not explicitly state all of the elements of the uncharged offense. *Id.* Instead, it is sufficient that any missing elements can reasonably be inferred from the charging instrument. *Id.*

¶ 40    Relevant here, a person commits aggravated assault when, without lawful authority, he (1) knowingly places (2) a person he knows to be an employee of a correctional institution (3) in reasonable apprehension of receiving a battery while (4) the employee is performing his official duties. 720 ILCS 5/12-2(b)(6)(i) (West Supp. 2015).

¶ 41    Here, the only element of aggravated assault not alleged in the indictment is that defendant placed Baluk in reasonable apprehension of receiving a battery. However, this element is easily inferred from the indictment, as it alleged that defendant "knowingly caused or attempted to cause" Baluk to come into contact with urine. Consequently, aggravated assault of a correctional institution employee is a lesser-included offense under the charging instrument approach in this case.

¶ 42    The next step is to determine whether the evidence was sufficient to uphold a conviction for aggravated assault. *Kennebrew*, 2013 IL 113998, ¶ 30. As noted, it is indisputable that Baluk was an employee of a correctional institution who was performing his official duties. The State contends that the third element, reasonable apprehension, was proven through the evidence that

defendant threatened to throw the open bottle of urine at the officers. In response, defendant maintains that any apprehension by Baluk would have been unreasonable because (1) defendant lacked the ability to hit Baluk with the urine, and (2) no "threatening action" accompanied his words.

¶ 43 However, both of defendant's claims are belied by the record. From the video, it is clear that defendant could have reached Baluk had he thrown the urine. Although defendant was handcuffed during the incident, the video shows that he was within 10 feet of Baluk and possessed sufficient range of motion to receive, open, and manipulate the bottle of urine. *Cf. People v. Kettler*, 121 Ill. App. 3d 1, 3 (1984) (no assault where an unarmed defendant threatened to kill officers while strapped to a hospital bed awaiting a medical procedure).

¶ 44 Similarly, although defendant is correct that "words alone do not normally make an assault," the record also shows that this was not a case of mere words. See *People v. Floyd*, 278 Ill. App. 3d 568, 570-71 (1996) ("In Illinois, we have held that words alone are not usually enough to constitute an assault. Some action or condition must accompany those words before there is a violation of the statute." (internal citations omitted)). In addition to repeatedly threatening to commit a battery with bodily fluids, defendant obtained a bottle of urine, removed the cap, approached the officers in an aggressive manner, and ignored commands to drop the bottle for several minutes. Thus, there was ample evidence that defendant committed an aggravated assault.

¶ 45 Defendant next argues, and the State concedes, that the trial court erred by failing to properly admonish the venire in accordance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). The parties acknowledge that defendant forfeited the argument by not raising the issue in

the trial court, but agree that we may nevertheless consider it under the first prong of the plain error doctrine.

¶ 46     A reviewing court may consider an unpreserved issue under the first prong of the plain error doctrine if the defendant shows that (1) a clear or obvious error occurred, and (2) the evidence was so closely balanced that the error alone threatened to tip the scales against him. *People v. Sebby*, 2017 IL 119445, ¶ 48. Violations of Rule 431(b) are cognizable under this prong of the doctrine. *Id.* ¶ 52.

¶ 47     Pursuant to Rule 431(b), a trial court must ensure that each potential juror "understands and accepts" four fundamental principles: (1) the defendant is presumed innocent, (2) the State must prove the defendant guilty beyond a reasonable doubt, (3) the defendant is not required to present evidence, and (4) the defendant's decision not to testify cannot be held against him. Ill. S. Ct. R. 431(b) (eff. July 1, 2012); see also *People v. Zehr*, 103 Ill. 2d 472, 477-78 (1984). The rule "mandates a specific question and response process" to which the trial court must strictly comply. *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). Whether a rule violation occurred is reviewed *de novo*. *Id.* at 606.

¶ 48     Here, we agree with the parties that the trial court did not strictly comply with Rule 431(b). Although the court asked the potential jurors whether they understood or had "any problems or qualms" with three of the four principles, the court did not specifically inquire into whether they understood or accepted that defendant was not required to present evidence. The trial court erred. *Id.* at 607.

¶ 49     Having concluded that an error occurred, the next step is to determine whether the evidence was closely balanced. In doing so, a reviewing court must evaluate the totality of the evidence and

conduct a "commonsense assessment of it within the context of this case." *Sebby*, 2017 IL 119445, ¶ 53. Our analysis begins with an assessment of the elements of the charged offenses and any evidence pertaining to the credibility of the witnesses. *Id.*

¶ 50 Because we have already reduced defendant's conviction on count III (aggravated battery against Baluk by urine), we first address whether the evidence was closely balanced as to the lesser-included offense of aggravated assault. *People v. Space*, 2018 IL App (1st) 150922, ¶ 67 (finding the evidence insufficient to sustain the defendant's murder conviction, after analyzing the closeness of the evidence supporting the lesser-included offense of aggravated battery.

¶ 51 As noted, undisputed trial evidence established that defendant obtained a bottle of urine, removed the cap, and repeatedly threatened to throw it onto Baluk and other officers as they stood nearby. Thus, it is clear that defendant had the intent and capability to commit a battery with the urine. Nevertheless, defendant argues that the jury could have concluded that Baluk was not in reasonable apprehension because other inmates and civilian jail employees "appear unfazed" by defendant's threats in the video.

¶ 52 We disagree with defendant's characterization. The video shows that the civilian employees promptly vacated the area while the uniformed officers surrounded defendant. The officers then cleared the other inmates from the room, radioed for assistance, and surrounded defendant while maintaining a distance of several feet. Although some of the inmates lingered in the room until the officers escorted them away, the testimony established that defendant's threats were directed at the officers, not other inmates. Thus, the video shows that the officers believed defendant's threats to be credible, and does not suggest that the evidence of aggravated assault was closely balanced.

¶ 53    We similarly find the evidence not closely balanced with respect to count IV, aggravated battery by bite against Hovel. To convict defendant on that count, the State was required to prove that he (1) caused bodily harm (2) to a person he knew to be an employee of a correctional institution (3) while the employee was performing his official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West Supp. 2015).

¶ 54    Again, there is no dispute that defendant knew Hovel was a correctional officer performing his official duties. Nor does defendant contest that he bit Hovel, which constituted the required bodily harm. See *People v. Johnson*, 2015 IL (3d) 130610, ¶ 5 (upholding the defendant's conviction for aggravated battery of a peace officer where he bit a police officer on the hand). Indeed, both Baluk and Hovel testified to the bite and identified a photograph of the mark it left on Hovel's forearm.

¶ 55    Defendant argues, however, that the evidence was closely balanced because the jury could have concluded that he was "gasping for air when he bit Hovel," and that he did not know whom he was biting because Hovel held his head against the floor during the struggle. Despite defendant's speculation about what the jury might have concluded, there was no evidence to suggest that he had difficulty breathing or was unable to see the victim of his bite. Instead, the evidence established that defendant was lying on his side and facing Hovel with his head unrestrained at the time of the bite. Defendant also maintained the bite and did not release Hovel's arm until Baluk struck him twice in the head, which undermines his theory that he was attempting to catch his breath. Thus, the evidence of defendant's guilt on count IV was overwhelming.

¶ 56    To convict defendant on counts VII and VIII (resisting Zurella and Baluk, respectively), the State was required to prove that he (1) knowingly resisted or obstructed (2) a person whom he

knew to be a correctional institution employee (3) in a way that proximately caused an injury to the employee (4) while that employee was performing his official duties. 720 ILCS 5/31-1(a-7) (West 2016).

¶ 57    According to defendant, the evidence was closely balanced on these counts because the jury could have found that he was not the proximate cause of the officers' injuries and was only "squirming on the floor" in "an effort to protect his immediate physical safety and reduce severe pain." However, the uncontroverted testimony from Baluk, Hovel, and Zurella established that defendant engaged in a minutes-long standoff with the officers, during which he repeatedly threatened to "piss [them] all down" and ignored their orders to drop the bottle. The bottle was dislodged when Zurella unexpectedly tackled defendant from behind. Although the video does not have audio, it corroborates the officers' testimony insofar as it shows that defendant argued with them, obtained a bottle of urine, and did not release it until he was tackled.

¶ 58    All three officers also testified that defendant struggled with them on the floor after the tackle. Despite defendant's assertion that the jury could have found he struggled with them for his own safety, there was no evidence that defendant was injured. Indeed, although Barksdale did not perform a thorough examination, he testified that he observed no visible injuries to defendant in the hours following the struggle.

¶ 59    The evidence showed that defendant was the proximate cause of the officer's injuries. As our supreme court has explained, a defendant is the proximate cause of an injury when " 'the injury is of a type that a reasonable person would see as a likely result of his or her conduct.' " *People v. Hudson*, 222 Ill. 2d 392, 401 (2006) (quoting *People v. Galman*, 188 Ill. 2d 252, 258 (1999)). Similarly, Illinois Pattern Jury Instruction, Criminal, No. 4.24 (2011), which was given to the jury

without objection, defines proximate cause as "any cause which, in the natural or probable sequence, produced the injury to a peace officer. It need not be the only cause nor the last or nearest cause."

¶ 60    Here, the evidence established that Baluk and Zurella were injured while defendant struggled to defeat their attempts to restrain him. It was entirely forseeable that defendant's conduct could cause the injuries. See *People v. Cervantes*, 408 Ill. App. 3d 906, 909 (2011) (fleeing defendant proximately caused the injuries to officers who slipped on ice while chasing him). Because defendant's resistance was clearly a direct cause of the officers' forseeable injuries, the evidence that he was a proximate cause of the injuries was not closely balanced.

¶ 61    We also reject defendant's contention that the jury's questions during deliberation "displayed it was on the fence" about the evidence supporting the resisting charges. See *People v. Johnson*, 408 Ill. App. 3d 157, 172-73 (2010) (rejecting a similar argument as being based on "logic *** of rather dubious merit"). Instead, our supreme court has noted that "[c]areful consideration of the evidence adduced and exhibits admitted is what we expect of jurors in any trial." *People v. Wilmington*, 2013 IL 112938, ¶ 35 (finding the evidence not closely balanced despite the fact that the jury sent notes to the trial judge).

¶ 62    The evidence of defendant's guilt on aggravated assault against Baluk, aggravated battery against Hovel, and resisting or obstructing Baluk and Zurella was not closely balanced. Review under the first prong of the plain error doctrine is therefore unwarranted, and we instead honor defendant's procedural default.

¶ 63    Next, defendant argues that the State's closing argument deprived him of a fair trial. Specifically, defendant contends that the prosecutor improperly (1) invoked the jury's sympathy

by stating that his conduct was "disgusting and reprehensible," (2) offered his personal opinion by stating that the officers do not have "an easy job" and "didn't deserve what happened to them," and (3) commented on defendant's demeanor in the courtroom by arguing "[w]e can see it on his face" that he intended to batter Baluk.

¶ 64    Defendant acknowledges that he has forfeited his challenges to the State's closing argument by not objecting in the trial court or including them in a posttrial motion. However, he argues that we may review the issue under either prong of the plain error doctrine, or, alternatively, as a matter of ineffective assistance of counsel.

¶ 65    As noted, a defendant seeking relief under the first prong of the plain error doctrine must show that (1) a clear or obvious error occurred, and (2) the evidence was closely balanced. *People v. Belknap*, 2014 IL 117094, ¶ 78. Under the second prong of the doctrine, a defendant must show that (1) a clear or obvious error occurred, and (2) the error was "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Coats*, 2018 IL 121926, ¶ 9. A defendant asserting ineffective assistance of counsel must show that (1) his counsel's performance was objectively unreasonable, and (2) a reasonable probability exists that the result of the trial would have been different but for counsel's deficiency. *People v. Henderson*, 2013 IL 114040, ¶ 11. Under any of these theories, the first step is to determine whether a clear or obvious error occurred. *People v. Cox*, 2017 IL App (1st) 151536, ¶ 52.

¶ 66    As an initial matter, the parties agree that there is "conflicting precedent" from Illinois courts about the proper standard of review. Defendant, citing our supreme court's decision in *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), argues that the proper standard is *de novo* because the trial court did not rule on the propriety of the comments that he now challenges on appeal. The

State does not say what it believes to be the applicable standard, but maintains that its closing argument was proper under any standard of review. This court, analyzing *Wheeler* and other decisions, has recently held that the propriety of remarks made during closing argument should be reviewed for abuse of discretion. *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 45; but see *People v. Davis*, 2018 IL App (1st) 152413, ¶ 68, and *People v. Cook*, 2018 IL App (1st) 142134, ¶ 64 (holding that (1) the propriety of remarks made during closing argument is reviewed for abuse of discretion, and (2) whether the improper remarks, if any, warrant a new trial is reviewed *de novo*). However, we find no error and would reach the same result under any standard of review.

¶ 67     A defendant faces a "substantial burden" when seeking to reverse his convictions based on the State's closing argument. *People v. Green*, 2017 IL App (1st) 152513, ¶ 77. Although a prosecutor may not inflame the passions of the jury (*Wheeler*, 226 Ill. 2d at 128), express his personal opinions (*People v. Lyles*, 106 Ill. 2d 373, 391 (1985)), or remark upon the courtroom demeanor of a nontestifying defendant (*People v. Campbell*, 332 Ill. App. 3d 721, 728 (2002)), he is generally afforded "wide latitude" during closing arguments (*People v. Caffey*, 205 Ill. 2d 52, 131 (2001)). Notably, the prosecutor is free to comment on the evidence and any reasonable inferences drawn therefrom. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). The prosecutor may also discuss matters of common knowledge or experience (*People v. Runge*, 23 Ill. 2d 68, 146 (2009)), and may comment unfavorably on the defendant and the crime to the extent such remarks are supported by the evidence (*People v. Sims*, 2019 IL App (3d) 170417, ¶ 46). Even when improper, remarks made during closing argument warrant reversal of a conviction only when they "engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them." *Wheeler*, 226 Ill. 2d at 123.

¶ 68    Here, the challenged comments did not engender unfair prejudice against defendant. The prosecutor stated that defendant's conduct was "[d]isgusting and reprehensible," however, this was an isolated comment that could not have reasonably inflamed the passions of the jury. See *People v. Glasper*, 234 Ill. 2d 173, 204 (closing argument must be viewed in its entirety). There is also no merit to defendant's argument that the prosecutor improperly offered his opinion by asserting that being a correctional officer was "not an easy job," and that the officers in this case "didn't deserve what happened to them." Nothing in the prosecutor's statements suggested that this was his personal opinion or was based on matters outside of the evidence. See *People v. Anderson*, 2011 IL App (1st) 071768, ¶ 61 (comment not improper unless the prosecutor explicitly states that it is a personal view). Moreover, both of these statements were fair comments on the evidence that defendant repeatedly threatened to "piss down" the officers and injured them by resisting their attempts to restrain him. Although defendant's trial theory was to dispute any wrongdoing, the State was entitled to presume the truth of its evidence. See *People v. Green*, 2017 IL App (1st) 152513, ¶ 77.

¶ 69    Defendant also argues that the prosecutor improperly commented on his courtroom demeanor during closing argument by stating that "[w]e can see it on his face" that he intended to commit a battery with the urine. The State contends that the prosecutor was not referring to defendant's facial expression in the courtroom, but rather, in the still image of the moment when defendant obtained the urine from Hodges. In response, defendant argues that the prosecutor could not have been referring to the image because it was no longer on display in the courtroom. However, we cannot discern whether the image was on display from the written record. Generally, ambiguities created by an insufficient record on appeal are construed against the defendant. *People*

*v. Smith*, 406 Ill. App. 3d 879, 886 (2010). This is especially so where, as here, the defense could have resolved any ambiguity by raising the issue in the trial court. *Id.*

¶ 70    The State's position is better supported by the record. First, it is clear that the still image was on display at times during the State's closing argument, as the prosecutor stated that "you can see in this photo here" that defendant received the urine from Hodges with a look of "satisfaction" on his face. Although the record suggests that the prosecutor also later displayed other images, he stated in conclusion that "defendant's intent was clear. We can see it here on his face." While the prosecutor could have been referring to defendant in the courtroom, the more reasonable interpretation of the record is that he redisplayed the image of defendant to emphasize his earlier point about it revealing defendant's intent. Moreover, the prosecution again displayed the image in rebuttal and made the same argument about defendant's expression therein. Thus, the limited record before us shows that the prosecutor was not commenting on defendant's courtroom demeanor, but rather, the evidence presented at trial. This was not improper. *Nicholas*, 218 Ill. 2d at 121 (State may remark on the evidence and reasonable inferences drawn from it).

¶ 71    In short, the State's closing argument as a whole was within the "wide latitude" it is afforded. As no error occurred, defendant cannot establish plain error or ineffective assistance of counsel.

¶ 72    Defendant next argues that the trial court erred by denying the appointment of new counsel and an evidentiary hearing on his *Krankel* claims.

¶ 73    When a defendant raises a *pro se* claim of ineffective assistance of counsel in the trial court, the court must first conduct a preliminary inquiry to determine whether the claim is supported by a factual basis. *People v. Jolly*, 2014 IL 117142, ¶ 29. If the court determines that defense counsel

was potentially deficient, it should appoint new counsel and conduct an evidentiary hearing. *Id.* If, however, the court finds the defendant's claim to be meritless after the initial inquiry, it may dismiss the allegation without further proceedings. *Id.*

¶ 74   In determining whether there is a factual basis for a defendant's claim, a "brief discussion between the trial court and the defendant may be sufficient." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). Additionally, "[t]rial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations." *Id.* The court may also rely upon its own knowledge of defense counsel's performance and the insufficiency of the allegation on its face. *Id.* at 79.

¶ 75   The crux of defendant's argument on appeal is his contention that his allegations were "ambiguous" and "not clarified by the trial court." However, after hearing from defendant and both of his attorneys, the trial court ascertained that defendant made two distinct allegations: (1) that a juror fell asleep at trial, and (2) that his attorneys failed to raise certain arguments in opening and closing. Although defendant argues that the court should have allowed him an additional opportunity to clarify his allegations, their substance is clear from the record. We also note that defendant personally brought the allegations to the court's attention and did not dispute the way his attorneys characterized them. Even on appeal, defendant does not explain why his attorneys were mistaken about his claims or how he could have clarified them for the trial court.

¶ 76   Furthermore, the trial court addressed both of defendant's allegations and found them to be meritless based on its own observations of the trial proceedings. Thus, no further inquiry was required. *Id.*

¶ 77 Finally, citing *People v. Blue*, 189 Ill. 2d 99, 138 (2000), defendant argues that he is entitled to a new trial due to the "cumulative effect" of the various errors he has alleged. However, we do not find cumulative error.

¶ 78                                        CONCLUSION

¶ 79 For the foregoing reasons, we reduce defendant's conviction on count III (aggravated battery against Baluk by urine) to the lesser-included offense of aggravated assault, vacate his sentence on that count, and pursuant to Illinois Supreme Court Rule 615(b)(4) (Ill. S. Ct. R. 615 (b)(4) (eff. Aug. 27, 1999)), we impose a two year sentence for aggravated assault to run concurrent with the other sentences.  We order the clerk of the circuit court to correct the mittimus.  *People v. Walker*, 2011 IL App (1st) 072889-B, ¶ 40 (Appellate court has authority to directly order the clerk of the circuit court to make the necessary correction to the mittimus). Defendant's convictions are affirmed on all other counts.

¶ 80 Affirmed in part, modified in part, vacated in part, and mittimus corrected.